Michael Dale BOWDEN *v.* STATE of Arkansas

CR 89-162                                            783 S.W.2d 842

Supreme Court of Arkansas
Opinion delivered February 12, 1990

*Gardner, Putnam & Miner*, by: *Buford Gardner* and *John Putman*, for appellant.

*Steve Clark*, Att'y Gen., by: *Clint Miller*, Asst. Att'y Gen., for appellee.

JACK HOLT, JR., Chief Justice. At his first trial, the appellant, Michael Dale Bowden, was convicted of capital murder and sentenced to life imprisonment without parole. He appealed, and we reversed on the basis that the trial court erred in admitting into evidence lineup identification testimony by a witness inasmuch as the lineup was conducted in violation of Bowden's sixth amendment right to counsel. *Bowden* v. *State*, 297 Ark. 160, 761 S.W.2d 148 (1988). Upon retrial, Bowden was again convicted of capital murder and sentenced to life imprisonment without parole. As his sole argument on appeal, Bowden contends that the trial court's restriction of his cross-examination of a witness for the prosecution denied him his sixth amendment right to confront the witness. We disagree and affirm.

As the facts are essentially the same as those in the first appeal, we limit our review to the matter in controversy.

Tom Duck, Captain in charge of the Investigation Division of the Harrison Police Department at the time of the murders of Johnny Hefley and Cindy Bowden, was called as a witness for the State. On direct examination, Captain Duck testified concerning his investigation soon after the incident. He related that the victims were shot with a semiautomatic weapon at close range, that a murder weapon was never found, that fingerprints were not made at the crime scene, and that after conducting several interviews, he was able to identify a possible suspect, Michael Dale Bowden. The prosecutor then asked, "The fact that you located a possible suspect at that point, did that mean that you ceased all effort to investigate other possible suspects?" Duck answered, "No, sir."

Later in Captain Duck's testimony about his investigation, the following exchange occurred:

> Prosecutor: At that point or any point in the investigation, did you completely eliminate the possibility of the willingness to investigate other possible suspects other than the one that I think you've indicated you had focused on?
>
> Mr. Duck: At that point, we felt we had the proper suspect.
>
> Prosecutor: *Prior to that time, had there been a concerted effort to check out other possible suspects?* [Emphasis added.]
>
> Mr. Duck: *Yes, sir. We had made various trips in outlying counties and following up possible leads and information phoned in to different agencies and what have you and they were all negative with result.* [Emphasis added.]

During the course of cross-examination, Duck was asked about other suspects:

> Defense counsel: And you also said that during the course of your investigation, not only did you investigate here, but you all also investigated some other suspects, is that correct?
>
> Mr. Duck: Yes, sir.

> Defense counsel: Were there other suspects in the case?
>
> Mr. Duck: Possibly not suspects, but possible witnesses.
>
> Defense counsel: *Were there other circumstances that led you all to be suspicious of someone?* [Emphasis added.]
>
> Mr. Duck: Yes, sir, there was.
>
> Defense counsel: *And what were the circumstances that had caused you to be suspicious?* [Emphasis added.]

At this point, the prosecutor objected, and the following dialogue occurred:

> Defense counsel: Your Honor, he opened it up.
>
> The Court: The Court is going to sustain the objection.
>
> Defense counsel: Your Honor, we would like to make a proffer.
>
> The Court: You may do so after I've released the jury.

After the jury was released, defense counsel proffered the following testimony:

> Defense counsel: Mr. Duck, during the course of your direct examination . . . , you testified as to your role in the investigation of the deaths of Cindy Hefley Bowden and Johnny Hefley, is that correct?
>
> Mr. Duck: Yes, sir.
>
> Defense counsel: And during the course of that testimony, you indicated that one of the things you did was look into other possible leads and suspects, is that correct?
>
> Mr. Duck: Yes, sir.
>
> Defense counsel: Okay. I want to ask you, what other — what steps did you — well, first, let me ask you, what other leads or possible suspects did you have at that time?

Captain Duck then related that he investigated rumors involving an incident in Newton County, one year prior to Johnny Hefley's and Cindy Bowden's murders, in which Terry Ricketts killed Roger Nichols. He explained that some evidence in the case

indicated that Johnny Hefley supplied the gun used by Ricketts and that Cindy Bowden was the object of the incident.

The testimony continued:

Defense counsel: I understand that, but part of your investigative function was to check out rumors in regard to that?

Mr. Duck: Yes, sir.

Defense counsel: Because of —

The Court: Now, we're getting into — the Court wants to understand again what my ruling has been here. We're dealing with both hearsay and relevancy. What you're eliciting right now —

. . .

Defense counsel: Your honor, at this point, the point I'm trying to make is, this officer testified on direct examination that they had other leads and other suspects and that they had checked those out. *We have the right to confront this witness about those assertions.* At this point, all I'm trying to do is establish what it was he was trying to check out. I haven't gotten to the point in order to establish — [Emphasis added.]

. . .

Defense counsel: Officer, were you involved in that investigation?

. . .

Mr. Duck: Yes, sir, I was.

Defense counsel: What did you do specifically in regard to that?

Mr. Duck: Mainly I followed Lieutenant Cornett's lead and we interviewed various witnesses, myself being a second investigator, in that area in Newton County.

. . .

Defense counsel: Did you ascertain whether or not any of

those persons that you interviewed had access to a blue Ford pickup truck on the night of the 18th or 19th of April?

Mr. Duck: I don't recall, Mr. Gardner.

Defense counsel: Did you attempt to locate the whereabouts of any persons you interviewed on the night of the 18th or 19th?

Mr. Duck: As I recall, part of the standard interview Lieutenant Cornett used was to establish where individuals were that weekend night and what they were doing before and then after this incident in Harrison.

Defense counsel: Did you fingerprint any of those individuals?

Mr. Duck: No, sir.

Defense counsel: Is there anything else that you did in regard to this investigation insofar as checking leads and talking to suspects out of that, the Newton County case that occurred about a year before that?

Mr. Duck: Not that I recall other than running down various rumors.

Defense counsel: That's all.

The sixth amendment to the United States Constitution and Art. 2, § 10 of the Arkansas Constitution guarantee the right of an accused in a criminal prosecution to be confronted with the witnesses against him. The right of confrontation provides two types of protection for a criminal defendant: the right physically to face those who testify against him and the opportunity to conduct effective cross-examination. *Delaware* v. *Fensterer*, 474 U.S. 15 (1985); *Winfrey* v. *State*, 293 Ark. 342, 738 S.W.2d 391 (1987). *See also Miller* v. *State*, 269 Ark. 409, 601 S.W.2d 845 (1980). In fact, "[t]he main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." *Delaware* v. *Van Arsdall*, 475 U.S. 673 (1986); *Davis* v. *Alaska*, 415 U.S. 308 (1974); *Winfrey* v. *State, supra.*

However, the right to cross-examine the prosecution's witnesses is not unlimited. *United States* v. *Cameron*, 814 F.2d

403 (7th Cir. 1987). Trial judges have wide latitude insofar as the Confrontation Clause is concerned "to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware* v. *Van Arsdall, supra.* The Confrontation Clause "guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware* v. *Fensterer, supra; Ohio* v. *Roberts*, 448 U.S. 56 (1980).

In order to determine whether the restrictions placed on the right to cross-examine a witness rise to the level of a constitutional deprivation, a reviewing court must look "to the record as a whole" and resolve whether the restrictions that the trial court imposed on the defendant's cross-examination created a substantial danger of prejudice by depriving the defendant of a meaningful opportunity to elicit available, relevant information that was likely to effectively impeach the credibility of the witness. *See United States* v. *Cameron, supra; United States ex rel. Blackwell* v. *Franzen*, 688 F.2d 496 (7th Cir. 1982), *cert. denied*, 460 U.S. 1072 (1983). In considering whether there has been a deprivation of meaningful cross-examination in violation of the Confrontation Clause, courts have considered various factors, such as whether an effective cross-examination would have been crucial to the defense. *See United States* v. *Kaplan*, 832 F.2d 676 (1st Cir. 1987), *cert. denied*, 485 U.S. 907, 108 S.Ct. 1080 (1988).

In *Davis* v. *Alaska, supra*, the trial court refused to allow the defendant, on cross-examination, to ask a key government witness if the witness had been on probation for burglary at the time he provided the information to the police that led to the arrest of the defendant. The United States Supreme Court reversed the conviction on the basis that the trial court had violated the defendant's right to confrontation because the restrictions it had imposed made it impossible for the defendant to effectively impeach the witness by showing bias.

In *Delaware* v. *Van Arsdall, supra*, the trial court prohibited all inquiry into the possibility that a witness for the prosecution was biased as a result of the State's dismissal of his pending public

drunkenness charge. The United States Supreme Court held that by "cutting off all questioning about an event that the State conceded had taken place and [an event] that a jury might reasonably have found furnished the witness a motive for favoring the prosecution in his testimony," the trial court violated the defendant's rights secured by the Confrontation Clause.

The case at bar is readily distinguishable from *Davis* and *Van Arsdall.* First of all, Captain Duck's testimony was not a consequential part of the prosecution's case, and therefore an effective cross-examination was not critical to the defense. The purpose of Duck's testimony was merely to show the progress of the initial stages of the investigation, including the fact that Bowden was identified as a suspect. Police investigators Gary Keeter, Wayne Cone, and Glen Redding also testified at length concerning most of the same details.

Secondly, it is obvious from examining the proffered testimony by Duck that it, at the most, was marginally relevant. More importantly, if permitted, it likely would have confused the issues in the case. Duck testified concerning his investigation of the various rumors involving an incident in Newton County, prior to the murders of Johnny Hefley and Cindy Bowden, in which Terry Ricketts killed Roger Nichols. He explained that some evidence in that case indicated that Johnny Hefley supplied the gun used by Ricketts and that Cindy Bowden was the object of the incident.

Granted, Captain Duck's testimony on cross-examination might have had the effect of showing that his recollection of the investigation was slight and that there was not a concerted effort to investigate other suspects. Notwithstanding, the issue of Duck's investigation of other suspects was not an important part of the State's case against Bowden.

The likely effect of this testimony would have been to invite the jury to speculate that someone else committed the murders. However, there was no evidence at trial linking other suspects to the actual commission of the murders. *See Maxwell* v. *State*, 284 Ark. 501, 683 S.W.2d 908 (1985).

Based upon the foregoing, we conclude that the restrictions the trial court imposed on the scope of Bowden's cross-examination were proper and that Bowden was not denied his

constitutional right to confront the witness against him.

Pursuant to Ark. Sup. Ct. R. 11(f), we have examined all other objections made at trial and find no reversible error.

Affirmed.