Henry Jackson SMITH *v.* STATE of Arkansas

CR 99-913                                                   8 S.W.3d 534

Supreme Court of Arkansas
Opinion delivered January 20, 2000

*William R. Simpson, Jr.*, Public Defender, by: *Kent C. Krause*, Deputy Public Defender, for appellant.

*Mark Pryor*, Att'y Gen., by: *David R. Raupp*, Ass't Att'y Gen., for appellee.

ANNABELLE CLINTON IMBER, Justice. The appellant, Henry Jackson Smith, was charged with two counts of rape for engaging in sexual intercourse or deviate sexual activity with his son, J.F., and his daughter, T.F., in violation of Ark. Code Ann. § 5-14-103 (Repl. 1997). Both of the victims were under the age of fourteen at the time they were alleged to have been raped by Mr. Smith. After a bench trial, the Pulaski County Circuit Court convicted Mr. Smith on both counts and sentenced him to two concurrent life terms in the Arkansas Department of Correction.

Both victims testified at the bench trial. J.F., age eleven at the time of the trial, testified that Mr. Smith held a gun to his head and then "sticked [*sic*] his private part into [J.F.'s] behind." According to J.F., Mr. Smith threatened to kill him, his sister, and his mother if J.F. told anyone about the incident. J.F. also testified that Mr. Smith forced him to "suck his private" about two times a day since he was five or six years old. Furthermore, J.F. testified to an incident in which he saw Mr. Smith, with his pants pulled down, laying on top of his sister, T.F., whose pants were also pulled down. T.F., age ten at the time of the trial, testified that Mr. Smith engaged in sexual intercourse with her "every Saturday or Sunday when mama worked." She further testified that Mr. Smith put a gun to her head and threatened to kill her, her brother, and her mother if she told her mother about the sexual activity. At the conclusion of her direct examination, T.F. identified Mr. Smith as the person who had raped and sexually abused her.

The State also introduced a taped statement that had been given by Mr. Smith prior to trial. In that statement, he confessed to rubbing T.F.'s clitoris with his index finger and laying on top of her and "hunching her on the stomach," while they were both naked and he wore a rubber on his penis. He maintained, however, that his penis never touched or penetrated her vagina. Mr. Smith also denied having anal sex with J.F., but acknowledged that he showed J.F. how to masturbate by touching J.F.'s penis and having J.F. touch his penis.

Mr. Smith took the stand in his own defense at the trial and denied sexually penetrating either of his children. He admitted, however, that he had oral sex with T.F., that he had rubbed her vagina with his fingers, and that he had laid on top of her with his penis on her stomach while both were naked and "hunched" on her stomach. Moreover, he admitted showing J.F. how to masturbate. On cross-examination by the State, he denied holding a gun to the children's heads, but acknowledged that he told T.F. not to tell her mother about the sexual activity. Finally, he admitted using a rubber when he was on top of T.F. "so it wouldn't make a mess."

Denise Maples, a psychotherapist and counselor, testified that both children suffered from post-traumatic stress disorder and that both had regressed in developmental achievement as a result of being abused. She also testified that T.F. had become enuretic and was forced to take medication for the condition. With regard to J.F., Ms. Maples testified that he was extremely traumatized by the abuse, had repeated nightmares, and had developed an extreme fear of other men who entered his home. J.F. also had to take medication for his condition. According to Ms. Maples, J.F. tended to disassociate at times when he would become traumatized and think about his past abuse. Kay Lynn Franklin, the children's mother, testified that T.F. tried to climb out of a two-story window as a result of the abuse, and J.F. hid in a closet because he was afraid someone was going to hurt him.

At the beginning of the bench trial, the following colloquy took place between the prosecutor, the defense counsel, and the trial court:

> PROSECUTOR: Your Honor, I have one question that I would like — or I guess motion that I would like to ask. The children in this particular case have been traumatized somewhat, and we believe

that the presence of the defendant is going to have some problem with them being able to testify. I would ask to simply be able to have them testify with the chair facing outside his line of sight.

THE COURT: Sure.

PROSECUTOR: In other words, have the chair facing over there.

THE COURT: I don't mind that, as long as he's here and the attorneys and everybody can observe the child. Sure, I don't have any problem with that.

DEFENSE COUNSEL: Your Honor, I just would like to object just for Mr. Smith's benefit, that he should be able to confront them face-to-face. '

THE COURT: I don't think confronting means sitting face-to-face with them. Confronting them, being they're in the courtroom, hearing the testimony and seeing them and so forth. That's what confronting means; not being able to stare them in the face. They'll be here in the courtroom where he can see them and see them testify. They don't have to look at him, and there's nothing wrong in turning the chair over there so they don't have to look at him.

Mr. Smith now appeals his rape convictions and alleges that the trial court erred in denying him his right to confront J.F. and T.F. face-to-face during the trial without first making specific findings that such an abridgment of the Confrontation Clause in the Sixth Amendment to the United States Constitution and the Arkansas Constitution was necessary to further an important public policy, and that the procedures to determine the reliability of the children's testimony were still preserved and available.

■■ The Confrontation Clause in the Sixth Amendment to the United States Constitution states: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him. . . ." Article 2, section 10, of the Arkansas Constitution repeats that same right of confrontation. We have consistently interpreted both clauses to provide identical rights:

The [S]ixth [A]mendment to the United States Constitution and Art. 2, 10 of the Arkansas Constitution guarantee the right of an accused in a criminal prosecution to be confronted with the witnesses against him. The right of confrontation provides two types of protection for a criminal defendant: the right physically to face

those who testify against him and the opportunity to conduct effective cross-examination.

*Bowden v. State*, 301 Ark. 303, 783 S.W.2d 842 (1990). *See also, Winfrey v. State*, 293 Ark. 342, 738 S.W.2d 391 (1987); *Miller v. State*, 269 Ark. 409, 601 S.W.2d 845 (1980). The United States Supreme Court held in *Coy v. Iowa*, 487 U.S. 1012 (1988), that "the Confrontation Clause guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact." Two years later, the Court held that the Confrontation Clause does not guarantee criminal defendants an *absolute* right to a face-to-face meeting with witnesses against them at trial. *Maryland v. Craig*, 497 U.S. 836 (1990). The Court further held that the right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial only where the trial court makes a case-specific finding that the denial of such confrontation is necessary to further an important public policy, such as protecting a child witness from trauma, and only where the reliability of the testimony is otherwise assured. *Id*. Mr. Smith, in his only point on appeal, argues that the trial court erred when if failed to make the findings required by *Maryland v. Craig*.

The two-part test established in *Maryland v. Craig* applies only when a criminal defendant has been deprived of his constitutional right to a face-to-face confrontation with the witnesses against him. *Id.* Consequently, as a threshold matter, we must first decide whether Mr. Smith has been deprived of his constitutional right to a face-to-face confrontation with his accusers.

In *Coy v. Iowa*, the Court held that the defendant's constitutional right to confront the witnesses against him face-to-face was violated when a screen that was authorized by a state statute was placed between the defendant and the witnesses during their testimony. When the screen was in place, the defendant could "dimly perceive" the witnesses, but the witnesses could not see the defendant at all:

> The screen at issue was specifically designed to enable the complaining witnesses to avoid viewing [the defendant] as they gave their testimony, and the record indicates that it was successful in this objective. It is difficult to imagine a more obvious or damaging violation of the defendant's right to a face-to-face encounter.

*Coy v. Iowa, supra.*

■ The undisputed facts in this case are that the trial court allowed the child witnesses to testify while sitting in a witness chair that faced "outside of [Mr. Smith's] line of sight." The trial court noted that the witnesses did not have to look at Mr. Smith, but that they would be in the courtroom where Mr. Smith, the attorneys, and the trier of fact could see and hear them testify. Although the witness chair was positioned so that the witnesses did not have to look at Mr. Smith while they testified, the record reflects that they were not precluded from doing so. This is evidenced by the undisputed fact that T.F. identified Mr. Smith during her testimony as the person who raped her. During her direct examination, the prosecutor asked T.F. if she could "point at him and tell us if you see the person in here that did this to you? Could you point at him for us?" The record then indicates that T.F. "[p]ointed at defendant." The witnesses in this case were therefore not physically prevented from looking at Mr. Smith. In contrast, the witnesses were physically blocked from seeing the defendant by a one-way screen in *Coy v. Iowa*, and by a one-way closed-circuit television in *Maryland v. Craig*. Here, the witnesses were able to look at Mr. Smith if they chose to do so, as shown by T.F.'s in-court identification of Mr. Smith. Nor were they required by the Confrontation Clause to look at Mr. Smith: "The Confrontation Clause does not, of course, *compel* the witness to fix his eyes upon the defendant; he may studiously look elsewhere, but the trier of fact will draw its own conclusions." *Coy v. Iowa, supra.* (Emphasis added.)

■ Based on the undisputed facts in this case, we conclude that nothing prevented the witnesses from hearing or seeing Mr. Smith and nothing prevented Mr. Smith, the attorneys, and the trier of fact from hearing or seeing the witnesses as they testified against him. We therefore hold that Mr. Smith has failed to establish as an initial matter that there has been a deprivation of his constitutional right to a face-to-face confrontation with the witnesses against him.

Our holding is supported by cases from other jurisdictions. For example, in *People v. Sharp*, 36 Cal. Rptr. 2d 117 (Cal. Ct. App. 1994), the California Court of Appeals held that the defendant was not deprived of his constitutional right to confront witnesses when the prosecutor positioned herself in the courtroom so that the child

victim, Tammy G., did not have to look at the defendant while testifying about his acts of sexual molestation.

Similarly, in *State v. Utah*, 806 P.2d 204 (Utah Ct. App. 1991), the defendant claimed that his constitutional right of confrontation was denied when his daughter, the victim, was seated out of his direct line of sight during her testimony. The defendant and his counsel were seated at the table customarily assigned to the prosecution, in order to remove the witness from the defendant's direct line of sight. *Id*. The Utah Court of Appeals rejected the defendant's claim that his confrontation rights were denied based upon the following conclusion: "We find no constitutional requirement that an accused be able to establish eye contact with a witness who is looking straight ahead." *Id*. Finally, the Indiana Court of Appeals held that there was no Confrontation Clause violation in placing the witness chair at a slight angle toward the jury and away from the accused. *Stanger v. State*, 545 N.E.2d 1105, 1112-14 (Ind. App. 1989), *overruled on other grounds, Smith v. State*, 689 N.E.2d 1238 (Ind. 1997). The court stated:

> Where, as here, the method of eliciting testimony permits jury, witness, and defendant all to see and hear each other and possesses the added virtue of actually facilitating the truthfinding function at the trial, positioning the witness away from the defendant is but a reasonable limitation on the defendant's interest in physical confrontation. As the Court noted with respect to cross-examination, confrontation does not mean in whatever way and to whatever extent a defendant might wish.

*Id*. (citations omitted). *See also, Brandon v. State*, 839 P.2d 400 (Alaska Ct. App. 1992) (defendant's right to confrontation not infringed by child testifying from small chair and table in courtroom rather than witness stand).

■ For his only point on appeal, Mr. Smith argues that the trial court erred when it failed to make the specific findings required by *Maryland v. Craig*. That argument, however, makes an assumption that Mr. Smith has been deprived of his constitutional right to a face-to-face confrontation at trial. In light of our holding that Mr. Smith has failed to establish as an initial matter the presence of such a constitutional deprivation, we need not reach the merits of his sole argument on appeal.

Affirmed.

BROWN, J., concurs.

ROBERT L. BROWN, Justice, concurring. I do not disagree with the legal reasoning of the majority opinion in any respect. My problem is I do not believe Smith has presented this court with sufficient information to make a merits determination on the Confrontation Clause. What does "outside his [Smith's] line of sight" mean? How was the courtroom configured with respect to Smith and the child witnesses? Did the child witnesses have their backs to Smith or were they at an angle? None of this is clear from the record presented to this court, and it was Smith's obligation to make it clear for our review.

I would affirm based on Smith's failure to present this court with a record of what occurred so that we can make an intelligent decision. See *Tarry v. State*, 289 Ark. 193, 710 S.W.2d 202 (1986). Without that record, we can only speculate about how Smith and the child witnesses were positioned and whether the Confrontation Clause was implicated in any respect.