John Leelyn SEELY *v.* STATE of Arkansas

CA CR 06-1318 263 S.W.3d 559

Court of Appeals of Arkansas
Opinion delivered September 26, 2007

*The Cannon Law Firm, PLC*, by: *David R. Cannon*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Vada Berger*, Ass't Att'y Gen., for appellee.

JOHN B. ROBBINS, Judge. Appellant John Seely appeals his conviction for the rape of his then three-year-old daughter, as found by a jury in Pulaski County Circuit Court. Appellant posits a single argument for reversal: that the trial court erred in admitting hearsay evidence of his daughter through the testimony of her mother and a social worker. He contends that this violated his right secured by

the Sixth Amendment to confront witnesses against him. We agree that the testimony of the social worker included inadmissible hearsay evidence in violation of the Confrontation Clause of the Sixth Amendment. We further conclude that this error was not harmless beyond a reasonable doubt. Therefore, we reverse and remand.

Before trial, defense counsel moved to have a competency hearing to determine if the child, JB, would testify at trial. When that hearing was conducted, JB was four years old. The trial judge found her not to be competent to testify. For purposes of trial, the State intended to call as witnesses JB's mother and the social worker who interviewed JB at Arkansas Children's Hospital. The State sought a hearing pursuant to Ark. R. Evid. 804(b)(7), to determine the admissibility of the testimony of JB's mother (Suzette Barnes) and the social worker (Trish Smith). This particular rule concerns the admissibility of child hearsay when certain guarantees of trustworthiness are established in a hearing outside the presence of the jury. *See* Ark. R. Evid. 804(b)(7).[1]

---

[1] This Rule provides specifically:

(7) Child hearsay in criminal cases. A statement made by a child under the age of ten (10) years concerning any type of sexual offense against that child, where the Confrontation Clause of the Sixth Amendment of the United States is applicable, provided:

(A) The trial court conducts a hearing outside the presence of the jury, and, with the evidentiary presumption that the statement is unreliable and inadmissible, finds that the statement offered possesses sufficient guarantees of trustworthiness that the truthfulness of the child's statement is so clear from the surrounding circumstances that the test of cross-examination would be of marginal utility. The trial court may employ any factor it deems appropriate including, but not limited to those listed below, in deciding whether the statement is sufficiently trustworthy.

1. The spontaneity of the statement.

2. The lack of time to fabricate.

3. The consistency and repetition of the statement and whether the child has recanted the statement.

4. The mental state of the child.

5. The competency of the child to testify.

6. The child's use of terminology unexpected of a child of similar age.

7. The lack of a motive by the child to fabricate the statement.

At this hearing, the State argued, in anticipation that the defense would raise a confrontation clause argument, that the social worker's testimony did not violate the prohibition against "testimonial" hearsay pursuant to *Crawford v. Washington*, 541 U.S. 36 (2004). The defense argued that the testimony did not comport with Ark. R. Evid. 804, and further that the social worker's testimony was in fact "testimonial" in violation of Supreme Court principles announced in *Crawford, supra*, and in *Davis v. Washington*, 126 S. Ct. 2266 (2006). The defense concluded by arguing that if either the mother or the social worker were allowed to testify to what the child said, then this violated the defendant's right to confrontation pursuant to the Sixth Amendment. The trial judge found that each woman's testimony was admissible.

At trial, appellant's counsel renewed the pre-trial objections to the statements attributable to JB, which were overruled as continuing objections. The following evidence came forth at trial. Suzette testified that three-year-old JB came to her with complaints that her "booty" was hurting, which Suzette explained was her vaginal area.[2] Suzette stated that she had JB lie down, and Suzette observed redness and raw-appearing skin in her vaginal area. Suzette cleansed the area and put Vaseline on it. Thereupon, JB resumed playing, but about an hour later, JB came back to her mother complaining of pain. Suzette applied more Vaseline, and JB again resumed playing. However, at bedtime, JB complained again that her "booty" was hurting and that she wanted her mother to take her to the doctor. This raised concerns to Suzette

---

8. The lack of bias by the child.

9. Whether it is an embarrassing event the child would not normally relate.

10. The credibility of the person testifying to the statement.

11. Suggestiveness created by leading questions.

12. Whether an adult with custody or control of the child may bear a grudge against the accused offender, and may attempt to coach the child into making false charges.

(B) The proponent of the statement gives the adverse party reasonable notice of his intention to offer the statement and the particulars of the statement.

(C) This section shall not be construed to limit the admission of an offered statement under any other hearsay exception or applicable rule of evidence.

[2] Suzette stated that JB used the word "butt" for her buttocks and anus.

because JB was generally afraid to go to the doctor for fear of getting injections. Suzette then asked if JB knew why she was hurting. Suzette said that JB responded, "Yes. My daddy did it." Suzette asked JB, "what do you mean your daddy did it?" JB then said to her mother, "My daddy put his fingers in my booty, dug in my booty." Suzette asked when this happened, and JB replied, "Monday, Tuesday and Wednesday." Suzette believed her daughter to be telling the truth. At that point, she took JB to Arkansas Children's Hospital emergency room.

Trish Smith testified that she was a social worker at Arkansas Children's Hospital, where she was working on September 23, 2005, when JB was brought in for a sexual-abuse evaluation. Trish said she routinely developed rapport with children who were brought in concerning suspected abuse cases; she was a mandated reporter of suspected abuse. Trish explained that, for such cases, she typically generated conversation to determine whether the child was aware of why he or she was brought to the hospital and to determine the child's terminology for anatomy. Trish translated this information to give to the physician prior to the physical exam.

Upon questioning, JB gave the word "booty" for her vagina. When Trish asked JB why she was at the hospital, JB responded that her father had put his fingers in her booty, pointing to her front genital area. Trish asked if JB's father had said anything, and JB replied, "He said he would whip my ass if I told."

Dr. Esquivel, the pediatrician at the hospital, testified that she examined JB's genitals, finding an abrasion or laceration inside her labia majora and a superficial abrasion within the labia minora. The doctor believed these abrasions to be between two and three days old upon examination. Dr. Esquivel opined that this was consistent with the history of sexual abuse but could also be consistent with many other means of irritating the vaginal tissues.

Appellant testified in his own defense, adamantly denying that he touched his daughter inappropriately. He said that he and Suzette were living together at that time, and he was contributing to the household expenses, but they were more like roommates than husband and wife.

The jury considered the foregoing and determined that appellant was guilty of raping JB. He was sentenced to a twenty-year prison term. A judgment and commitment order was filed, and appellant timely filed a notice of appeal. This brings us to

appellant's argument, which is that the trial court violated his constitutional right to confront the witness against him by allowing JB's hearsay statements into evidence through the testimony of her mother and the social worker. The State asserts that no error occurred, and even if it did, it was harmless beyond a reasonable doubt.

The Confrontation Clause, found in both the United States and Arkansas Constitutions, is intended to permit a defendant to confront the witnesses against him and to provide him with the opportunity to cross-examine those witnesses. *See Smith v. State*, 340 Ark. 116, 8 S.W.3d 534 (2000); *Huddleston v. State*, 339 Ark. 266, 5 S.W.3d 46 (1999). In *Crawford v. Washington*, 541 U.S. 36 (2004), upon which appellant relies, the Supreme Court held that out-of-court statements by a witness that are "testimonial" are barred under the Confrontation Clause unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness, regardless of whether such statements are deemed reliable by the court, abrogating *Ohio v. Roberts*, 448 U.S. 56 (1980).[3] Testimonial statements cause the declarant to be a "witness" within the meaning of the Confrontation Clause, because this means one is "bearing witness" against the accused. *Davis, supra*. It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations on hearsay evidence, is not subject to the Confrontation Clause. *Id*. The word "testimonial" is used in its colloquial rather than technical legal sense. *Id*.

The child, per appellant's request, was found to be incompetent to testify. Whether JB's incompetency had any bearing on admissibility of the hearsay statements is not advanced on appeal as a basis to reverse. Appellant argued to the trial court that the child was not "unavailable" for purposes of Rule 804, but neither is this argument advanced on appeal. It is undisputed that appellant was not afforded a prior opportunity to cross-examine JB or that the statements attributed to JB were hearsay. Therefore, the only question presented on appeal for us to resolve, and the only one argued in appellant's brief, is whether JB's statements to her mother and to the social worker were "testimonial" hearsay. If so,

---

[3] Arkansas Rule of Evidence 804(b)(7) was drafted to protect children from the potential harms that might result from giving testimony in open court. Under prior case law, including *Ohio v. Roberts*, 448 U.S. 56 (1980), this Rule passed constitutional muster, where reliability of the testimony was tested in a pre-trial hearing.

then they were admitted into evidence in violation of appellant's Sixth Amendment right to confront this witness. This is an issue of first impression in Arkansas.[4] We hold that the social worker's testimony included "testimonial" hearsay. We hold that the mother's testimony did not include "testimonial" hearsay.

The term "testimonial" applies at a minimum to prior testimony at a preliminary hearing and to police interrogations. *See Crawford, supra.* The accompanying formality is key in those situations. *See id.* However, statements made to police or emergency personnel in the midst of an emergency are not generally considered testimonial because those are made most often in a rapid rendition of a present event, an exigent circumstance. *See Davis, supra.* When the context of the questioning is for the purpose of establishing past events potentially relevant to later criminal prosecution, then the questioning is inherently testimonial. *See id.* The Supreme Court has heretofore not defined precisely what "testimonial" means, but instead, it gave a generalized framework of asking whether, objectively considered, the interrogation produced testimonial statements. *See id.*

 As concerns the social worker, who is a mandated abuse reporter, we hold that this presented testimonial hearsay, in excess of constitutional bounds. This was not an emergency situation, relating immediate information seeking assistance for an immediate need. *Compare Davis, supra.* While the interview also had a medical purpose, that does not alter the fact that the statements taken from JB were testimonial as well. Statements can have dual purposes, but to the extent that one such purpose was to determine facts that could be used in a criminal proceeding, it is testimonial.

Appellant presents a compelling case, *United States v. Bordeaux*, 400 F.3d 548 (8th Cir. 2005), which we deem very persuasive. In that appeal, Mr. Bordeaux was facing charges of aggravated sexual abuse and objected to the admission of hearsay of the child victim admitted through a videotaped interview. A "forensic interviewer" spoke to the child before being examined by a doctor. In that interview, the victim said that Bordeaux placed his penis in her mouth. The tape was played for the jury, and the doctor was allowed to recount what the child said on the tape. The Eighth Circuit held that the child's statements were testimonial

---

[4] We attempted to certify this case to our supreme court. Certification was denied.

and violated Bordeaux's Sixth Amendment right to confront this witness. The court noted that the purpose of the interview was in dispute, but one such purpose was to collect information for law enforcement. Even though another purpose was for medical care, "*Crawford* does not indicate, and logic does not dictate, that multi-purpose statements cannot be testimonial." *Id.* at 556. The Eighth Circuit decided that this interview was the sort of ex parte examination at which the confrontation clause was aimed. Accordingly, the evidence was deemed inadmissible. We decide likewise in the present appeal.

We hasten to add that the Eighth Circuit has also commented on the standard to be employed when the State seeks to admit into evidence the identity of the abuser as relevant to treatment of emotional and psychological injuries. The Eighth Circuit announced that the threshold is met where a physician makes clear to the victim that inquiry into the identity of the abuser is important to diagnosis and treatment, and the victim manifests understanding of that idea. *See United States v. Renville*, 779 F.2d 430, 438 (8th Cir. 1985). We do not announce that we adopt such a standard, but had we done so, this standard is not met in this case. *Compare United States v. Gabe*, 237 F.3d 548 (8th Cir. 2001).

Moving to the mother's testimony, we hold that the hearsay statements attributable to JB were not "testimonial." Therefore, those hearsay statements were not in violation of the Confrontation Clause. In *United States v. Manfre*, 368 F.3d 832 (8th Cir. 2004), the Eighth Circuit noted its belief that statements made to loved ones or acquaintances are not the kind of evidence to which *Crawford* is directed. *See* footnote 1. The mother's questioning of her daughter was not formal or in the nature of an interrogation, as those terms have been defined under *Crawford*.[5] There were only three questions posed to JB by her mother that resulted in incriminating responses, contrary to the dissenting judge's assertion of repeated questioning to elicit a desired response.

---

[5] For an interesting overview of the issue of child hearsay as it relates to the Confrontation Clause, see Professor Richard D. Friedman's law review article *"Grappling with the Meaning of 'Testimonial'"* published in the 2005-2006 edition of the Brooklyn Law Review beginning at page 241. *See also Note, Confronting the Rules: Needed Changes to the Arkansas Rules of Evidence After Crawford v. Washington*, 59 Ark. L. Rev. 973 (2007).

This brings us to the outcome of the error in admitting the testimonial hearsay through the social worker. We hold that this appeal must be reversed and remanded because this error was not harmless beyond a reasonable doubt.

Our supreme court has held that trial error, even involving the Confrontation Clause, is subject to a harmless-error analysis. *See Watson v. State*, 318 Ark. 603, 887 S.W.2d 518 (1994); *see also Winfrey v. State*, 293 Ark. 342, 738 S.W.2d 391 (1987). To conclude that a constitutional error is harmless and does not mandate a reversal, this court must conclude beyond a reasonable doubt that the error did not contribute to the verdict. *Schalski v. State*, 322 Ark. 63, 907 S.W.2d 693 (1995); *Vann v. State*, 309 Ark. 303, 831 S.W.2d 126 (1992). When determining whether the denial of a party's right to cross-examine a witness for possible bias is harmless error, the court considers a host of factors, including the importance of the witness's testimony, whether the testimony was cumulative, whether evidence existed that corroborates or contradicts the testimony of a witness, and the overall strength of the prosecution's case. *See Sullivan v. State*, 32 Ark. App. 124, 798 S.W.2d 110 (1990). To perform this review, we excise the impermissible hearsay statements and determine whether the remaining evidence shows beyond a reasonable doubt that the error did not contribute to the verdict. *See Sparkman v. State*, 91 Ark. App. 138, 208 S.W.3d 822 (2005).

We cannot conclude with certainty that the verdict was not affected by JB's statement to the social worker that accused her father of digital penetration and of threatening to whip her if she revealed this information. The State's witnesses were able to establish, without JB's words to the social worker, that JB suffered trauma to her genitals that occurred within a few days of her complaints of pain, and that the trauma was consistent with a history of sexual abuse but could also be consistent with a number of other non-criminal causes. The mother's hearsay testimony was the sole evidence identifying appellant as the perpetrator. The social worker's testimony was cumulative to the mother's regarding identity, but nonetheless, it significantly bolstered the mother's testimony and it added the report of a threat to punish JB if she revealed the abuse. The social worker was purportedly an uninterested witness, so her testimony was particularly important. While the social worker's testimonial hearsay might not have contributed to the verdict, we cannot conclude with any certainty that it did not, which is the test for "harmless beyond a reasonable

doubt." *Compare Sparkman, supra* (holding that even if videotaped interview of child violated Sparkman's constitutional right to confront this witness, the evidence was harmless beyond a reasonable doubt where appellant admitted engaging in inappropriate sexual conduct with child, among other evidence of direct accusation of criminal sexual conduct).

Because appellant's Sixth Amendment right to confront the witness against him was violated, and we cannot conclude that it was harmless beyond a reasonable doubt, we reverse and remand.

GLADWIN, GLOVER, and MILLER, JJ., agree.

HART and BAKER, JJ., concur in part; dissent in part.

JOSEPHINE LINKER HART, Judge, concurring in part, dissenting in part. I agree that this case must be reversed and remanded. However, I believe that the majority has adopted a far too restrictive view of what constitutes "testimonial hearsay," and therefore, I write separately.

As the majority notes, when the Supreme Court handed down *Crawford*, it expressly stated that it did not intend to exhaustively define testimonial hearsay, but noted "at a minimum" it included prior testimony at a preliminary hearing and police interrogation. I do not disagree with the majority's conclusion that the hearsay statements allegedly made by JB to social worker Trish Smith, who was a mandatory reporter, should have been excluded, as Smith's testimony violated Seely's rights under the Confrontation Clause. I believe that the majority's reasoning was sound in this instance: because Smith's questioning of the child was not necessitated by exigent circumstances and involved the "accompanying formality" that we associate with police interrogation, the hearsay in this instance was closely akin to the *Crawford* Court's "minimum" definition of "testimonial hearsay."

I do not, however, believe that their analysis properly excludes the hearsay statements that were allegedly made to Suzette Barnes. I believe they wrongly rely on *United States v. Manfre*, 368 F.3d 832 (8th Cir. 2004), asserting that it stands for the proposition that a hearsay statement made to "loved ones or acquaintances" does not violate the Confrontation Clause. Furthermore, I believe they mischaracterize the evidence when they assert that Barnes's questioning of her daughter "was not formal or in the nature of an interrogation."

In the first place, *Manfre's* analysis of *Crawford* was confined to a footnote because the Supreme Court had handed down *Crawford* after the Eighth Circuit had taken *Manfre* under submission. Needless to say, the implications of *Crawford* were not briefed at any level, and of course, the fact that the Eighth Circuit's whole *Crawford* analysis was confined to a footnote makes it mere dicta.

If, for argument's sake, I were to accept the premise that *Manfre* was even persuasive authority, it is so factually distinguishable as to make it completely inapplicable to the case at bar. First and foremost, the *Manfre* statements could not by themselves establish that a crime had been committed. The hearsay statements merely offered an explanation about the declarant's discussion about a propane tank with his former employer after a phone call that was partially overheard by a co-conspirator's half-brother. The sponsor of the hearsay statement had no more than a casual interest in the declarant's statements at the time they were made, and in fact, he ascribed no importance to the statements whatsoever until several months later when he was contacted by federal authorities pursuant to an arson investigation following a fire that took his brother's life. Conversely, the victim's alleged statements constituted almost all of the evidence in the instant case and independently supplied proof of all of the elements of rape.

Additionally, the rule that the majority purports to lift from *Manfre* — that admission of hearsay statements made to *family members* does not violate the Confrontation Clause — is all but cut out of whole cloth. I submit that it would not matter if the hearsay statements in *Manfre* were made to family members or the Director of the F.B.I.

I also disagree with the majority's assertion that the lack of "formality" is a determinative factor in deciding whether or not the alleged victim's statements to her mother constituted testimonial hearsay. Here, the supposed lack of "formality" is illusory at best. As the majority notes, the statement was elicited from JB after repeated questioning by one of the most imposing authority figures in any three-year-old's life — the child's mother.

I note that the Confrontation Clause of the Sixth Amendment states in pertinent part that: "In all criminal prosecutions, the accused shall enjoy the right to . . . be confronted with the witnesses against him." I would look to the nature of the statement; if it accusatory, it is testimonial. *See State v. Mizenko*, 127 P.3d 458 (Mt. 2006) (Nelson, J., dissenting). To do otherwise is to

court absurd results as we have here. Despite the fact that JB has been determined to be incompetent to testify, her testimony was nonetheless placed in evidence through her mother in a form that could not be tested by cross-examination. If this does not violate the Confrontation Clause, nothing does.

Finally, while it is certainly true that *Crawford* does not provide all the definitive answers and definitions that would make this case easy to analyze, it does clearly abrogate the analytical formations promulgated in *Ohio v. Roberts*, 448 U.S. 56 (1980), which held that the Confrontation Clause would not be violated if the hearsay that was admitted "falls under a firmly rooted hearsay exception or bears particularized guarantees of trustworthiness." (Internal punctuation omitted.) *Crawford*, 541 U.S. at 60. As the *Crawford* Court stated:

> [T]he Clause's ultimate goal is to ensure the reliability of evidence, but it is a procedural rather than a substantive guarantee. It commands, not that the evidence be reliable, but that the reliability be assessed in a particular manner: by testing in the crucible of cross-examination. The Clause thus reflects a judgment, not only about the desirability of reliable evidence (a point on which there could be little dissent), but how reliability can best be determined.

Even though the appellant has abandoned his arguments based on Arkansas Rule of Evidence 804(b)(7), I wish to express my concern about the rule's constitutionality. It appears to me that while it may have passed muster under *Ohio v. Roberts, supra*, it does not comport with the Supreme Court's decision in *Crawford*. I recommend that the bar and our supreme court examine Rule 804(b)(7).

BAKER, J., joins.