2010 Ark. App. 548

**Nicholas TARKINGTON, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 10–65.**

Court of Appeals of Arkansas.

June 30, 2010.

Jonathan T. Lane, Hancock, Lane & Barrett, Little Rock, AR, for appellant.

Dustin McDaniel, Atty. Gen., Deborah Nolan Gore, Asst. Atty. Gen., for appellee.

COURTNEY HUDSON HENRY, Judge.

Appellant Nicholas Tarkington appeals a Lonoke County Circuit Court order convicting him of two counts of rape and sentencing him to forty years' imprisonment on each count. For reversal, Tarkington argues that the circuit court erred in depriving him of his right to confront witnesses. We affirm.

The State charged Tarkington with two counts of rape for having sexual intercourse with his six-year-old daughter, K.T., and for forcing his four-year-old daughter, L.T., to perform oral sex. For these charges, Tarkington stood trial before a Lonoke County jury. The record reflects that the prosecuting attorney had difficulty eliciting verbal responses from the child witness, and the court allowed a short recess to give K.T. the opportunity to compose herself. However, when K.T. returned to the stand, she continued to shake her head to indicate "yes" or "no." At a sidebar conference requested by defense counsel, the prosecutor stated that she would seek verbal replies from the child witness in an effort to make a better record. At that time, defense counsel noted that the prosecuting attorney stood in a position that blocked K.T. from Tarkington's line of sight during the child's testimony. Defense counsel objected to the prosecutor positioning herself between the child witness and Tarkington, and the court overruled Tarkington's objection. During the sidebar conference, the following exchange occurred:

DEFENSE COUNSEL: And one other thing, Your Honor, I was wondering if counsel could stand a little bit closer or a little bit to the side. It's hard for me—

THE COURT: I think there is a legitimate reason for counsel to position herself in the position that she is as long as you are not blocking Mr. Lane's [defense counsel's] view of the witness.

PROSECUTOR: Judge, and he can get up.

THE COURT: But I—the positioning of counsel I think is helpful to facilitating the proceeding, but at the same time, I understand that you have the right to reposition or make sure that you're observing the witness during the testimony.

DEFENSE COUNSEL: Yes, sir. But I would suggest that intentionally blocking or standing between K.T. and [appellant] is abrogating my client's Sixth Amendment right to confrontation. He has to—she has to be able to say in front of him, that's what the Sixth Amendment says. It's a lot easier to lie or to make stuff up when you're not looking right at the person.

THE COURT: Your objection to his violation of his Sixth Amendment right is

overruled. There are cases when he would not even be in the same room with the alleged victim during the testimony or to be able to observe and to hear and it's not a violation of the Sixth Amendment right so in this particular situation your objection is overruled.

The record contains little additional discussion of or reference to the prosecutor's position during K.T.'s questioning, and defense counsel did not raise the issue during L.T.'s testimony.

K.T. resumed testifying and, with the assistance of dolls, stated that her father had sexual intercourse with her in the presence of her sister. L.T. testified that Tarkington forced her to perform oral sex three times. The State also called Dr. Jerry Jones, an expert in pediatric sexual assault at Arkansas Children's Hospital, Detective Michelle Scroggins of the Lonoke County Sheriff's Office, and Christy Tarkington, the children's mother, to testify. Nancy Corley, Tarkington's live-in girlfriend, testified for the defense. After deliberations, the jury convicted Tarkington of two counts of rape and sentenced him to concurrent terms of forty years in the Arkansas Department of Correction. The circuit court entered a judgment and commitment order reflecting the two rape convictions, and Tarkington timely filed a notice of appeal.

For the sole point on appeal, Tarkington argues that the circuit court erred in overruling his objection that the prosecuting attorney purposely stood between Tarkington and K.T. when she testified.[1] Specifically, Tarkington asserts that the prosecutor's act abrogated Tarkington's right to confront witnesses guaranteed by the Sixth Amendment of the United States

Constitution and article 2, section 10 of the Arkansas Constitution.

The Confrontation Clause in the Sixth Amendment to the United States Constitution states: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...." Our supreme court consistently has interpreted the Confrontation Clauses of the United States and Arkansas Constitutions to provide identical rights. *Smith v. State*, 340 Ark. 116, 8 S.W.3d 534 (2000). In *Smith*, appellant was charged with two counts of rape of his son and daughter. During the children's testimony, the trial court allowed the prosecution to turn a chair so that neither child witness had to view Smith, and they testified while sitting in a witness chair that faced outside of Smith's line of vision. One child witness later identified her father as the perpetrator. In its ruling, the trial court noted that the witnesses were not required to establish eye contact with Smith but that they would be situated in the courtroom where Smith, the attorneys, and the trier of fact could see and hear them testify. *Id.* Our supreme court affirmed the circuit court's ruling, summarizing two landmark United States Supreme Court cases on this issue:

The United States Supreme Court held in *Coy v. Iowa*, 487 U.S. 1012 [108 S.Ct. 2798, 101 L.Ed.2d 857] (1988), that "the Confrontation Clause guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact." Two years later, the Court held that the Confrontation Clause does not guarantee criminal defendants an *absolute* right to a face-to-face meeting with witnesses against them at trial. *Maryland v. Craig*, 497 U.S. 836 [110

1. Tarkington did not make a confrontation-clause objection during L.T.'s testimony and, as a result, any argument that he was denied his constitutional right to confront L.T. cannot be considered by this court. *See George v. State*, 356 Ark. 345, 151 S.W.3d 770 (2004).

S.Ct. 3157, 111 L.Ed.2d 666] (1990). The Court further held that the right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial only where the trial court makes a case-specific finding that the denial of such confrontation is necessary to further an important public policy . . . and only where the reliability of the testimony is otherwise assured. *Id.*

*Smith*, 340 Ark. at 120, 8 S.W.3d at 536 (emphasis supplied). Noting these cases, our supreme court acknowledged the limitations set forth on Smith's right to confront a child witness and concluded that the victim was not required by the Confrontation Clause to be placed in a position where the accused could establish a face-to-face confrontation. The record in *Smith* reflected that these witnesses were not precluded from doing so. In affirming the circuit court's ruling, the supreme court held that Smith failed to establish as an initial ⌊5matter that he had been deprived of his constitutional right to a face-to-face confrontation. *Id.* at 121, 8 S.W.3d at 537. Further, in *Small v. State*, 371 Ark. 244, 264 S.W.3d 512 (2007), the supreme court noted its holding in *Smith, supra*, and stated: "The victim was not required by the Confrontation Clause to be placed in a position where the accused could establish eye contact. At most, a successful objection would have resulted in the court positioning appellant so that he could better view the witness." *Id.* at 259, 264 S.W.3d at 521.

In the present case, Tarkington failed to bring up a record of his alleged Confrontation Clause violation. The record presented to this court fails to indicate the locations of the child witness, the prosecutor, and Tarkington. One can assume from the sidebar discussion that K.T. testified from the witness stand, Tarkington sat at counsel table, and the prosecutor stood somewhere in between. We can only infer from the sidebar colloquy that, although Tarkington may not have made eye contact with K.T., he nevertheless was situated in the courtroom where he could have viewed her and could have heard her testify. *Smith, supra*. However, the record fails to indicate to what degree Tarkington's view was obstructed. Moreover, nothing in this record or in the sidebar exchange suggests that Tarkington made a motion for the court to position him in such a way to better view the child witness during her testimony. *Small, supra*. The supreme court repeatedly has stated that it is the appellant's burden to bring up a record sufficient to demonstrate that the trial court was in error, and where the appellant fails to meet its burden, we have no choice but to affirm the trial court. *Davidson v. State*, 363 Ark. 86, 210 S.W.3d 887 (2005). Thus, in light of Tarkington's failure to bring up a sufficient record, we affirm.

⌊6The dissent appears to infer from *Craig, supra*, that the trial court was required to make case-specific findings that a "denial of confrontation was necessary to protect K.T. from trauma," and Tarkington argues in his brief that the trial court failed to make specific findings required by *Craig, supra*. However, the dissent's inference presupposes that a Confrontation Clause violation actually occurred. In response, we simply note the holding of our supreme court in *Smith, supra*. Because we affirm the circuit court's ruling that Tarkington failed to establish, as an initial matter, the presence of a Confrontation Clause deprivation, we do not address the merits of Tarkington's argument on appeal.

Affirmed.

KINARD, GRUBER, BAKER, and BROWN, JJ., agree.

ROBBINS, J., dissents in part; concurs in part.

JOHN B. ROBBINS, Judge, dissenting in part, concurring in part.

Under our nation's constitution, the plumb line used to measure the civil liberties of our leading citizens must be the same one used to gauge the rights of those who might be considered the least deserving of them. Although protecting the rights of such people may at times give discomfort, we who have been set apart as judges have a sworn duty to support this constitution without respect or disrespect of persons. In my opinion we have failed our performance of the duty in this instance.

The Sixth Amendment to the United States Constitution contains what is called the Confrontation Clause, which states: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him. . . ." This right of confrontation provides two types of protection for a criminal defendant: the right physically to face those who testify against him and the opportunity to conduct effective cross-examination. *See Smith v. State,* 340 Ark. 116, 8 S.W.3d 534 (2000); *Bowden v. State,* 301 Ark. 303, 783 S.W.2d 842 (1990). The prong of the confrontational right involved here is the right of the accused to physically face the witness who testifies against him.

The United States Supreme Court held in *Coy v. Iowa,* 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988), that the Confrontation Clause guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact. Two years later, in *Maryland v. Craig,* 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990), the Supreme Court qualified this guarantee by holding that the right to a face-to-face meeting with witnesses against the defendant at trial may be satisfied if the trial court makes a case-specific finding that the denial of such confrontation is necessary to further an important public policy, such as protecting a child witness from trauma, and only where the reliability of the testimony is otherwise assured.

During the testimony of K.T., one of the alleged victims, the following exchange occurred during a sidebar conference:

APPELLANT'S COUNSEL: And one other thing, your honor. I was wondering if counsel [for the State] could stand a little bit closer or a little bit to the side. It's hard for me—

TRIAL COURT: I think there is a legitimate reason for counsel to position herself in the position she is in as long as you are not blocking [appellant's counsel's] view of the witness.

PROSECUTOR Judge, and he can get up.

TRIAL COURT: But I—the positioning of counsel is helping to facilitate the proceeding, but at the same time, I understand that you have the right to reposition or to make sure that you're observing the witness during the testimony.

APPELLANT'S COUNSEL Yes, sir. But I would suggest that intentionally blocking or standing between K.T. and Nicholas is abrogating my client's Sixth Amendment right to confrontation. He has to—she has to be able to say it in front of him, that's what the Sixth Amendment says. It's a lot easier to lie or to make stuff up when you're not looking right at the person.

TRIAL COURT: Your objection to his violation of his Sixth Amendment right is overruled. There are cases when he would not even be in the same room with the alleged victim during the testimony or to be able to observe and to hear and it's not a violation of the Sixth Amendment right so in this particular situation your objection is overruled.

APPELLANT'S COUNSEL: Thank you sir.

The majority opinion asserts that "although Tarkington may not have made eye contact with K.T., *he nevertheless was situated in the courtroom where he could have viewed her.*" These were the facts in *Smith v. State, supra.* They are not the facts here and the trial court made no such finding. The above colloquy permits no other reasonable inference but that the prosecutor was positioning herself so as to stand between appellant and the witness and effectively block each one's view of the other. When appellant's counsel voiced an objection to this conduct on constitutional grounds,[2] neither the prosecutor nor the court suggested that this was not indeed occurring. The trial court explained its ruling by stating that, because there are cases where a criminal defendant and the alleged victim would not even be in the same room while the victim testified, the present positioning of the prosecutor to block appellant's and witness's view of the other was not a violation of the Sixth Amendment's Confrontation Clause. Clearly, the trial court was applying the limitation on appellant's confrontation right permitted by *Maryland, supra,* without the prosecutor having established the facts prerequisite for this limitation's application.

Because it is apparent that appellant was denied the right to face his accuser, we should address the merits of his argument. In Maryland, *supra,* the issue was whether the victim's testimony through one-way closed circuit television was constitutionally permissible. The Supreme Court set forth the following guidelines:

> The requisite finding of necessity must of course be a case-specific one: The trial court must hear evidence and determine whether use of the one-way closed circuit television procedure is necessary to protect the welfare of the particular child witness who seeks to testify. Denial of face-to-face confrontation is not needed to further the state interest in protecting the child witness from trauma unless it is the presence of the defendant that causes the trauma. In other words, if the state interest were merely the interest in protecting child witnesses from courtroom trauma generally, denial of face-to-face confrontation would be unnecessary because the child could be permitted to testify in less intimidating surroundings, albeit with the defendant present. Finally, the trial court must find that the emotional distress suffered by the child witness in the presence of the defendant is more than *de minimis, i.e.,* more that mere nervousness or excitement or some reluctance to testify.

497 U.S. at 855–56, 110 S.Ct. 3157 (citations omitted).

In the case at bar, the trial court heard no evidence as to the effect of the appellant's presence on K.T., and made no case-specific finding that K.T. would likely be traumatized were she to testify in his presence. The trial court merely stated that there was a legitimate reason for the prosecutor's positioning and that it facilitated the proceeding. Because the trial court failed to make a case-specific finding that the denial of confrontation was necessary to protect K.T. from trauma or to further some other important public policy, the first part of the test set forth in *Maryland, supra,* was not satisfied. Therefore, there was a violation of the Confrontation Clause and appellant's rape conviction against

---

**2.** Although appellant's brief mentions the confrontation right guaranteed by the federal and Arkansas constitutions, only the confrontation right of the federal constitution's Sixth Amendment was raised before the trial court.

K.T. should be reversed and remanded for a new trial.

As for appellant's rape conviction pertaining to L.T., the record is devoid of any information regarding the positioning of the prosecutor relative to L.T. and the appellant during L.T.'s testimony. Moreover, appellant did not raise any objection about such issue during direct examination of L.T. Consequently, I concur with the majority that appellant's conviction as to L.T. should be affirmed.