James E. BROWN *v.* STATE of Arkansas

CA CR 05-1409                                    238 S.W.3d 614

Court of Appeals of Arkansas
Opinion delivered August 30, 2006

*Craig Lambert*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Clayton K. Hodges*, Ass't Att'y Gen., for appellee.

S AM BIRD, Judge. James E. Brown was charged in the Poinsett County Circuit Court with second-degree sexual assault for, on or about March 26, 2003, engaging in sexual contact with the sex organs of a seven-year-old girl. On April 28, 2005, Brown was convicted by a jury and was sentenced to five years' imprisonment in the Arkansas Department of Correction. He raises one point on appeal, contending that the trial court abused its discretion in allowing into evidence the victim's videotaped statement to police. We affirm the conviction.

K.H., the victim of the sexual assault, was Brown's niece by marriage. The State's witnesses at trial on April 27 and 28, 2005, included K.H., who was then nine years old; her parents; Detective Mark McDougal of the West Memphis Police Department, a criminal investigator who interviewed K.H. and executed a search warrant of Brown's residence; Gary Gray, an Arkansas State Police criminal investigator who executed the search warrant with McDougal and conducted an interview of Brown; and Leann Vanaman, a supervisor in the state police Division of Crimes Against Children. Also introduced into evidence, despite Brown's objection, was a videotape of McDougal's interview with K.H. The tape was introduced through McDougal when the State recalled him after Vanaman testified.

The testimony of K.H. and her parents established that she lived with her family in West Memphis but frequently visited her aunt and uncle (appellant Brown) in Marked Tree. Their testimony also established that the criminal investigation of Brown ensued after K.H.'s parents became alarmed about comments she made concerning physical attributes of toy ponies she had received for her seventh birthday.

K.H. testified in part, marking on diagrams and using slang terms that she said she had learned from Brown, that he touched her private parts and taught her how to masturbate him until he ejaculated. She said that he touched her when she was in bed with her aunt, that the masturbation happened "lots of times" under her uncle's desk, and that it happened once when she and her uncle were in a vehicle in a parking lot while her aunt was inside a store. She said that she and Brown watched television and the computer

— seeing on a bed two men and a girl who acted like she was going to take off her panties, and seeing a man with a camera who took pictures of men and women together. She testified that Brown told her that, when she got older, they would do the things that were on the television and the computer.

Supervisor Leann Vanaman testified that she visited the prosecutor's office sometime after November 25, 2003, with the purpose of showing personnel there K.H.'s videotaped interview with Detective McDougal. Vanaman described the interview as "compelling." McDougal, who had testified earlier in the trial, was recalled. He testified that seventy-three video tapes, all containing graphic sexual conduct of adults, were taken from Brown's home during execution of the search warrant. McDougal admitted that he had been unable to find a photograph of Brown's penis and nude pictures of K.H., items that she had told McDougal about.

The prosecutor, arguing that there were inconsistencies between K.H.'s trial testimony and previous videotaped statement to McDougal, requested a hearing under Arkansas Rule of Evidence 803(25) to determine whether the videotape of the interview could be played. Rule 803, entitled *Hearsay Exceptions— Availibility of Declarant Immaterial*, includes the following:

> (25) Child Hearsay When Declarant Is Available at Trial and Subject to Cross-Examination. A statement made by a child under the age of ten (10) years concerning any type of sexual offense, or attempted sexual offense, with, on, or against that child, which is inconsistent with the child's testimony and offered in a criminal proceeding, provided:
>
> (A) The trial court conducts a hearing outside the presence of the jury and finds that the statement offered possesses a reasonable guarantee of trustworthiness considering the competency of the child both at the time of the out of court statement and at the time of the testimony.
>
> (B) The proponent of the statement gives the adverse party reasonable notice of his intention to offer the statement and the particulars of the statement.
>
> (C) This section shall not be construed to limit the admission of an offered statement under any other hearsay exception or applicable rule of evidence.

In the present case, the court conducted an *in camera* hearing. The prosecutor asserted that K.H.'s videotaped, out-of-court statement should be admitted into evidence because "Rule 803(25) allows such a statement into evidence when the declarant is available at trial and subject to cross examination." The following arguments transpired during the hearing:

> DEFENSE COUNSEL: This is an adversarial proceeding. I cross-examine the witness and, invariably, things sometimes change. What this Rule is designed for is not that but the situation where a person completely forgets and there is no proof whatever. That is not the case here.

> PROSECUTOR: That is a misstatement of the Rules, Your Honor. When the declarant is available, you don't look to any other factors other than the ones outline[d] in this Rule. *We are not asking that this statement be admitted because the witness is unavailable. We are asking that it be admitted because the witness is available to cross-examination under this Rule.*

> TRIAL COURT: I have watched this tape and I think the Rule addresses situations just like this one. I am going to allow it to be shown to the jury.

> DEFENSE COUNSEL: Your Honor, this was done by a police officer and the witness was not subject to cross-examination. There are no guarantees of trustworthiness with this statement. That is the whole reason for the adversarial procedure and the confrontation clause. Why is this video tape more reliable than what she said today? [K.H.] was not scared when she testified. She gave testimony like a champ.

> PROSECUTOR: The question is whether the statement has sufficient indicia of reliability to meet constitutional muster. As the Court recalls from viewing the tape, there was nothing about the way the interview was conducted that shows there was any influence or words put into [K.H.]'s mouth.

> DEFENSE COUNSEL: If this were a business record, or something like that, it would be one thing, but this is a

one-sided interview by a police officer who is trying to get charges filed and the purported victim. That is the reason in itself for the confrontation clause in the Constitution. Cross-examination of this statement cannot occur and it is particularly harmful to the defense because of the age of the case. The Prosecutor will want to go back at the end of the case and argue that, [K.H.] said it back then and she said it today. This will be bolstering the State's case. Actually, this will be more than bolstering her case, this will be her case.

PROSECUTOR: The Rule only requires an inconsistency with a prior case and it is limited to children under the age of ten in sexual offenses. There is a two year gap between the trial and this event, and this is a seven and now nine year old. That is exactly the scenario and why this hearsay exception is there.

TRIAL COURT: I agree. Proceed.

(Emphasis added.)

The videotape was admitted into evidence and was played for the jury. K.H.'s statements to Detective McDougal in the videotaped interview were more detailed and graphic than her trial testimony had been. She said that Brown penetrated her with his finger, and she described the process of physically assisting him until he masturbated. Using slang for body parts, she stated that Brown attempted to put his penis "up in" her, that it happened lots of times, that they watched acts of oral sex and sexual intercourse on the computer, that he took one picture of her wearing only her underwear and one with no clothes, and that he told her that when she was older — ten or eleven or twelve — he would put his penis in her vagina.

Defense counsel again protested when the playing of the tape was over, objecting that he could not "cross-examine the tape." The prosecution replied that counsel could cross-examine McDougal, and the court ruled, "That is how we're gonna do it." Defense counsel proceeded to cross-examine McDougal, asking him about the questions he had asked K.H. and about her answers.

After the jury retired to deliberate, it asked to view the tape. Brown objected that the jury would give undue emphasis and more weight to the tape than to K.H.'s courtroom testimony. He

argued that the evidence was prejudicial because it was not subject to cross-examination and was in contravention of the Confrontation Clause. The trial court agreed, likening the tape to videotaped depositions that are not allowed in the jury room, and the jury was not allowed to have the tape. The jury then sent the trial court a note asking, "How can we be denied evidence that has already been admitted?" In open court, the judge explained his concern that they might give the tape greater weight or emphasis than it should have; he instructed them to rely on their notes and recollections of the video just as with other testimony.

On appeal, Brown asserts that Ark. Rule Evid. 803(25), as applied to his case, is patently unconstitutional because it deprived him of cross-examination and his right to confront his accuser, as guaranteed him by the Sixth Amendment. He claims that the videotaped statement made by the victim to Officer McDougal violated his right to confront the witnesses against him under *Crawford v. Washington*, 541 U.S. 36 (2004). He asserts that "the witness was in no way unavailable. She testified." He complains that K.H.'s statement to Officer McDougal, made long before trial, was not subject to cross-examination; that cross was limited to examination of McDougal, "a poor substitute"; and that the State's case was much weaker absent the videotape.

██ To the extent that Brown now challenges the constitutionality of Rule 803 itself, we agree with the State that the issue cannot be raised because it was not raised to the trial court. *See, e.g., Woolbright v. State*, 357 Ark. 63, 75, 160 S.W.3d 315, 323 (2004). Therefore, we reject on appeal any constitutional challenge regarding the rule. Brown also argues, chiefly citing *Crawford, supra*, that the admission of K.H.'s videotaped statement to Detective McDougal violated his Sixth Amendment right to confront the witness against him. We address this argument because it was presented to the trial court.

In *Crawford* the United States Supreme Court held that the Sixth Amendment's Confrontation Clause precludes the admission of testimonial hearsay evidence when the witness is unavailable to testify and the defendant has not had a prior opportunity for cross-examination. 541 U.S. at 68. The *Crawford* court also stated, however, that "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements. . . . The Clause does not bar

admission of a statement so long as the declarant is present at trial to defend or explain it." 541 U.S. at 59 n. 9.[1]

■ We agree with the State that Brown has misinterpreted *Crawford*, and that it does not apply to the present case. The *Crawford* court clearly stated that the Confrontation Clause does not bar admission of hearsay statements when the hearsay declarant testifies at trial. Here, K.H. appeared at trial, was placed under oath, and was subject to cross-examination by Brown. Although Brown complains on appeal that he was unable to cross-examine K.H. about her videotaped statement to police, he points to no ruling that prevented him from recalling her after the tape was admitted after McDougal's testimony so that she could be questioned about the interview. We hold that the Confrontation Clause erected no barrier to the introduction of the videotaped interview, and Brown's right to confront K.H. was not violated. *Crawford, supra,* which addressed "testimonial statements of witnesses absent from trial," 541 U.S. at 59, was not implicated.

Affirmed.

BAKER and ROAF, JJ., agree.

---

[1] In the recent case of *Davis v. Washington*, 547 U.S. 813 (2006), the Supreme Court defined the kind of police interrogations that are barred from admission into evidence under *Crawford v. Washington, supra,* where hearsay declarants do not testify at trial:

> When we said in *Crawford, supra,* at 53, 124 S.Ct. 1354, that "interrogations by law enforcement officers fall squarely within [the] class" of testimonial hearsay, we had immediately in mind (for that was the case before us) interrogations solely directed at establishing the facts of a past crime, in order to identify (or provide evidence to convict) the perpetrator.

547 U.S. at 826. The *Davis* court held that a victim's 911 statements were not testimonial for purposes of the Confrontation Clause but that statements in response to police questioning, taken some time after potentially criminal events had ended and describing how they began and progressed, were inherently testimonial.