2009 Ark. App. 472

**William Edward SNIDER, Appellant,**

**v.**

**STATE of Arkansas, Appellee.**

**No. CA CR 08–507.**

Court of Appeals of Arkansas.

June 17, 2009.

J. Sky Tapp, Hot Springs, for appellant.

Dustin McDaniel, Att'y Gen., by: Vada Berger, Ass't Att'y Gen., for appellee.

JOSEPHINE LINKER HART, Judge.

This case is once more before us after we ordered re-briefing in an unpublished January 28, 2009 opinion. We now decide this case on the merits. Edward Snider appeals his conviction by a Columbia County jury on charges of residential burglary, committing a terroristic act, and two counts of aggravated assault. For these crimes, Snider received consecutive sentences totaling 384 months in the Arkansas Department of Correction and a fine of $20,000. On appeal, Snider argues that the trial court erred in admitting into evidence a tape of three 911 calls that one of the victims, Jana Blackwell, made near the time of his alleged crimes and a videotape of Blackwell's statement made to police shortly after they responded to the 911 call. Blackwell did not testify at trial. We agree that the trial court erred in admitting the videotape of Blackwell's interview with police. However, we find the error to be harmless beyond a reasonable doubt and affirm the convictions.

Because Snider does not challenge the sufficiency of the evidence, we will only briefly summarize the facts before considering his allegations of error. Snider and Blackwell divorced in August 2006. Blackwell was awarded possession of the marital residence, but Snider continued to live with her until December 21, 2006, when she insisted that he leave. By this time, Snider had rented another residence and had moved most of his personal belongings to that dwelling. However, Snider's boat, a significant quantity of hand tools, fishing tackle, and camping gear remained at Blackwell's house.

Blackwell began dating Robert Travis Barnwell several months before the divorce. He worked on an off-shore oil rig, but pursued his romance with Blackwell every third week when he received shore leave. Blackwell eventually banned Snider from her residence to make room for her new paramour, with whom she intended to spend the Christmas holiday.

On the rain-soaked Christmas Eve of 2006, Snider decided that he should "meet" Blackwell's boyfriend. Snider, accompanied by his son, William Coby Snider, who had resided with his dad and Blackwell prior to the divorce, went to Blackwell's

house. Snider went to the door, only to be chased from the porch by Barnwell, who was wielding Blackwell's thirty-eight special revolver. Snider got back into his truck and spun out of the yard, splattering mud on Barnwell's truck.

Snider returned to his house and started drinking. Toxicology reports introduced at the trial indicated that Snider had also ingested methamphetamine and Xanax. Eventually, William left to go to Christmas dinner with his fiancee. Meanwhile, Blackwell had called 911 and reported Snider's intrusion.

After his son William left, Snider armed himself with a Sig Sauer P226 forty-caliber semi-automatic pistol and a twelve-gauge Remington shotgun and drove his four-wheeler back to Blackwell's house. He parked a tenth of a mile from the residence and walked toward the house. Snider paused in the yard and fired several rounds of buckshot into the residence. Barnwell and Blackwell scurried for cover, with Blackwell concealing herself in her bedroom closet. After kicking the door, Snider entered and fired three shots from his handgun into the bedroom. One of the bullets struck Barnwell in the leg. A scuffled ensued, and Blackwell left the bedroom to call 911. Barnwell claimed that Snider pressed his Sig Sauer to his chest, but the gun jammed. Barnwell then "cold-cocked" Snider. The beating that ensued resulted in Snider sustaining a concussion and broken facial bones. Snider was also shot with Blackwell's thirty-eight.

When police arrived, they found Snider writhing in pain on the kitchen floor. He was suffering from a gunshot in the leg and severe facial contusions. A dozen live shotgun rounds were found on Snider's person. The two guns that he brought into the residence had been placed on the back porch. Five spent shotgun shells were found in the yard, and three forty-caliber slugs were found in the bedroom. Lieutenant Mike McWilliams turned on his video camera and began videotaping the scene. Eventually, he conducted an interview of Blackwell, who fairly calmly responded to his questions concerning the events that had transpired that night.

The error complained of in this appeal was brought about because Blackwell did not testify at Snider's trial. Rather than merely accepting Blackwell's absence, or compelling her attendance, the State chose to introduce her to the jury by playing the three recorded phone calls she made to 911 and a videotaped interview conducted by the police after they responded to the crime scene. We review the decision by the trial court to admit this evidence under an abuse of discretion standard. *Barrett v. State*, 354 Ark. 187, 119 S.W.3d 485 (2003).

Although listed as separate points, we will consider Snider's arguments concerning the admission of Blackwell's videotaped interview together. He contends that the trial court abused its discretion by admitting Blackwell's statement into evidence because it did not qualify as an excited utterance and it violated his right to confront the witness. Regarding whether the interview qualified as an excited utterance, Snider analyzes his case in terms of the five factors listed in *Barrett* and asserts that the factors indicate that the statement should have been excluded. The five factors are (1) the lapse of time, (2) the age of the declarant, (3) the physical and mental condition of the declarant, (4) the characteristics of the event, and (5) the subject matter of the statement. *Id.* The *Barrett* court further held that it must appear that the declarant's condition at the time was such that the statement was spontaneous, excited or impulsive, rather than the product of reflection and deliberation.

■ Snider asserts that the lapse of time, approximately thirty minutes, allowed Blackwell to "calm down and reflect upon what happened"; that Blackwell's age of thirty-seven, as |₅compared to situations involving very young children, militates against finding that her interview was an excited utterance; that her mental condition was not that of a person that had been brutally traumatized, as in the case of a rape victim, but rather one who was able to answer a police officer's questions; that Blackwell was uninjured and "safe" when she gave her interview; and that the statements that Blackwell made were in response to police questioning. We agree with this analysis. Our review of the video shows that while Blackwell was certainly upset by the events that she had just witnessed, her answers to police questions were deliberate and thoughtful, not "excited or impulsive." Accordingly, it was error for the trial court to admit Blackwell's interview as an excited utterance. Our rules of evidence prevent the admissibility of hearsay evidence. Ark. R. Evid. 802. A recitation of past events does not constitute an excited utterance. *Marx v. State*, 291 Ark. 325, 724 S.W.2d 456 (1987).

■ Regarding Snider's related argument that introduction of the videotaped interview also violated his right to confront Blackwell, we likewise agree. We acknowledge that there was some question in our minds regarding whether this issue was preserved. Certainly, this issue could have been more thoroughly argued to the trial court. Snider did not mention the United States Supreme Court's seminal case of *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), or its progeny, or even argue to the trial court that Blackwell's interview constitut-

ed "testimonial hearsay." However, Snider did argue that admitting into evidence Blackwell's |₆out-of-court statements denied him the right to cross-examine Blackwell.[1] In *Caswell v. State*, 63 Ark.App. 59, 973 S.W.2d 832 (1998), we held that such an argument was sufficient to preserve an appellate argument invoking the Confrontation Clause. We also acknowledge that Snider could have been more direct in asserting that his cross-examination argument applied both to admitting the 911 tapes, which was obvious, and to the videotaped interview. However, it was obvious to the trial judge who disposed of Snider's objection to the video with the "same ruling" he made with regard to the 911 tape. Accordingly, we reach the merits of Snider's Confrontation Clause argument.

■ As Snider notes, although the *Crawford* court did not give a comprehensive definition of what constitutes "testimonial hearsay," it did specifically mention "police interrogations." While a correct statement of the law, we note that the Supreme Court later, to a degree, limited this definition in *Davis v. Washington*, 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006), by stating that statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. Conversely, such statements are deemed "testimonial" when the circumstances objectively indicate that there is no such ongoing emergency and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution. *Id.* Blackwell's interview was |₇clearly obtained after the emergency had passed and

---

1. The trial judge disposed of Snider's motion to exclude the videotaped interview by stating that he was allowing its introduction for the same reason that he allowed the 911 recordings to be introduced.

was conducted as part of a criminal investigation. Accordingly, we agree that Blackwell's videotaped interview qualifies as testimonial hearsay, and Snider's Sixth Amendment rights under the Confrontation Clause were violated. We hold that the trial court erred in admitting the video tape for this reason as well.

■ However, our inquiry does not end there, as we must consider whether the error was harmless. Snider concedes that arguments concerning violations of a defendant's rights under the Confrontation Clause as well as arguments concerning evidentiary rulings are subject to harmless-error analysis. *Sparkman v. State*, 91 Ark.App. 138, 208 S.W.3d 822 (2005). We must affirm if the error is harmless beyond a reasonable doubt. We hold that it is.

The elements of each of the four offenses for which Snider was convicted were proven by evidence that was completely independent from the evidence that was contained in Blackwell's videotaped interview. Contrary to Snider's characterization of Blackwell as the "star witness," in this case, that title belonged to Barnwell. Indeed, it was uncontroverted that Blackwell for much of the incident was either hiding in a closet or had fled the residence to call 911. Moreover, after the trial court had ruled that the videotaped interview would be admitted, Snider's trial counsel secured admissions from the police that most of Blackwell's knowledge of the case came from what Barnwell had told her. Further, while there were discrepancies between what Blackwell stated in her interview, particularly concerning how Barnwell came to possess her thirty-eight, if anything, these discrepancies aided the defense's theory of the case, not the State's. Finally, Barnwell's testimony was well corroborated by physical evidence and was either confirmed or not contradicted by Snider's own testimony. As noted previously, shotgun shells were found in the yard and on Snider's person, and Snider confirmed that the shotgun that was found on the back porch was his. Snider was found inside the residence, as were slugs and empty casings from his forty-caliber pistol, which he also confirmed that he owned. Finally, Barnwell had a gunshot wound that was inflicted with Snider's pistol. Accordingly, we hold that although the trial judge clearly erred in admitting Blackwell's videotaped interview, the error was harmless beyond a reasonable doubt.

■ Snider next argues that the trial court erred in admitting the tape of the 911 calls because their probative value is substantially outweighed by the danger of unfair prejudice in violation of Rule 403 of the Arkansas Rules of Evidence. He contends that the tapes were not necessary to prove any part of the State's case and that they were cumulative of other evidence and served no other purpose than to prejudice the jury against him by attempting to show that Blackwell was in fear of her life. He asserts that the error was particularly egregious because he was not able to cross-examine Blackwell. We hold that admission of the 911 tapes is not reversible error.

■ We agree that the probative value of the 911 tapes was low—the statements on the tape were, at best, cumulative of other evidence presented at trial. Moreover, we cannot disagree that the primary purpose of admitting the 911 tapes appeared to be tied to an effort to create sympathy for the victims in this case. Accordingly, the prejudice clearly outweighed the probative value of the 911 tapes, and therefore, it was error for the trial court to admit the 911 tapes. However, we find the error to be harmless for the same reasons we found admission of Blackwell's videotaped statement to police

harmless. Finally, to the extent that Snider is arguing that his rights under the Confrontation Clause were violated because he was not able to cross-examine Blackwell about her statements on the tape, 911 calls have been held to not be "testimonial hearsay" for the purposes of Confrontation Clause jurisprudence. *Brown v. State,* 96 Ark.App. 66, 238 S.W.3d 614 (2006) (citing *Davis v. Washington,* 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006)).

Affirmed.

BAKER, J., agrees.

ROBBINS, J., concurs.