Robert Lee SPARKMAN *v.* STATE of Arkansas

CA CR 04-268                                       208 S.W.3d 822

Court of Appeals of Arkansas
Opinion delivered May 25, 2005

---

*Daniel D. Becker*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Clayton K. Hodges*, Ass't Att'y Gen., for appellee.

KAREN R. BAKER, Judge. A jury in Benton County Circuit Court convicted appellant, Robert Lee Sparkman, of raping T.B., a four-year-old girl, and sentenced him to 216 months' imprisonment in the Arkansas Department of Correction. Appellant's sole point on appeal is that the admission of a video-taped interview of the child during his trial violated his right of confrontation guaranteed by the Sixth Amendment. Appellant relies on the recent Supreme Court of the United States case of *Crawford v. Washington*, 541 U.S. 36 (2004).[1] We affirm.

Prior to trial, appellant filed a motion to determine T.B.'s competency to testify. Appellant also filed a motion *in limine* to bar introduction of the videotaped interview of the child taken by Janice McCutcheon at the Child Advocacy Center. On March 13, 2003, a hearing was held to determine the competency of the child and the admissibility of her videotaped interview. T.B. testified and revealed that she was not able to distinguish between a truth and a lie. Also during her direct examination, T.B. was unwilling to answer questions regarding appellant. At the conclusion of the direct examination, defense counsel did not take the opportunity to cross-examine T.B. As a result, the trial judge determined that the child was unavailable as a witness. Furthermore, the trial judge determined that the videotape of the child's interview was admissible as evidence at trial.

A jury trial was held on July 30, 2003. At the trial, Angela Acey, T.B.'s mother, testified that she and appellant met in September 2001. At the time, she and T.B. were living with her

---

[1] This Court attempted certification of this case to our Supreme Court, which declined to accept it.

parents. She and appellant began dating and eventually moved in together. During the time they lived together, appellant was unemployed, and Acey worked at a daycare and at the Days Inn. From March 2002 to June 2002, while Acey worked at the Days Inn, she left T.B. in appellant's care.

Heather Sangwin, Acey's sister, testified that she and T.B. were very close. Sangwin testified that they spent time together on a regular basis. In June 2002, T.B. went swimming with her aunt and her cousin. Sangwin testified that she had the opportunity that day to talk to T.B. about appellant. She asked T.B. if appellant had ever "touched her sexually." Without hesitation, T.B. told Sangwin that appellant had touched her and "pointed to her private." T.B. also said that appellant had touched her with his tongue. T.B. told Sangwin that she had not told her mother about the incident because appellant told T.B. that he would hurt her if she did. Knowing that T.B. would be in Sangwin's mother's care throughout the rest of the weekend, Sangwin called the Springdale Police Department and the hotline on Monday morning to report the information. Sangwin went to the police department to answer some questions regarding the incident. When the police questioned Acey during the investigation, she told detectives that she was very surprised at the allegations against appellant.

Soon thereafter, T.B. was interviewed by Janice McCutcheon at the Children's Advocacy Center. As forensic interviewer, McCutcheon interviews victims of alleged child abuse. McCutcheon testified that T.B. mentioned several times during the interview that appellant had "whupped" her. McCutcheon testified that she uses dolls during the interviews that are anatomically correct. McCutcheon also testified as to the following: "When I asked her how the defendant touched her, she pressed one doll against the other. She took the penis with her hand and put it there. I asked a clarifying question of what she was doing. From my recall, she said inside." After T.B. disclosed the penetration, McCutcheon said she had difficulty getting her to continue and to focus.

Brad Abercrombie from the Rogers Police Department conducted an interview of appellant on June 26, 2002. The videotape and a transcript of the interview were admitted into evidence and played for the jury. At the beginning of the interview, appellant acted surprised when he learned of the charges against him. Appellant also denied having committed the offense. However, further into the interview, appellant described an occa-

sion when he and T.B. were "cuddling" in his bed together. She was coloring, and appellant was lying next to her with her rear end towards him. Appellant admitted that while the two were cuddling, his hand "must have accidentally hit her on, hit her on her privates that's all." Appellant further admitted to Detective Abercrombie that he made T.B. touch his penis and that T.B. kissed his penis. He also admitted to Abercrombie that he ejaculated in her presence.

Dr. Karen Farst worked at the Children's Advocacy Center on the day T.B. was brought in for an examination. Dr. Farst explained that, while there appeared to be no injury to T.B.'s inner thigh area and labia majora, a "notch" was discovered on her hymen. The notch was located at the "five o'clock position." Dr. Farst described a notch as healing tissue that appeared like a scar. Dr. Farst explained that trauma to the hymen meant that there had been penetration beyond the labia majora. Any injury to the hymen would require overstretching to the point of tearing. As the tear healed back together, the notch or indentation appeared. The location of the notch was significant in that a notch at the five o'clock position was indicative of the force and direction of penetration. The fact that the labia majora was not injured indicated that the labia was open when the trauma occurred and allowed Dr. Farst to rule out accidental injury. The notch was described as being two to three weeks old in that it was healing and had thickened and become white and plaque-like. Dr. Farst opined that the notch found on T.B.'s hymen was consistent with intentional penetration past her genitalia.

Following Dr. Farst's testimony, the State rested its case. Defense counsel then moved for a directed verdict on the basis that the State had failed to prove a prima facie case of rape. The motion was denied, and the defense did not present any witnesses. Ultimately, the jury convicted appellant of raping T.B. and sentenced him accordingly. This appeal followed.

Appellant's only point on appeal is that the admission of the video taped interview during his trial violated his right of confrontation guaranteed by the Sixth Amendment. *Crawford v. Washington*, 541 U.S. 36 (2004), upon which appellant relies, held that out-of-court statements by witnesses that are testimonial are barred under the Confrontation Clause unless witnesses are unavailable and defendants had a prior opportunity to cross-examine, regardless of whether such statements are deemed reliable by the court, abrogating *Ohio v. Roberts*, 448 U.S. 56 (1980). Appellant

specifically asserts that under *Crawford* the child's videotaped interview "clearly contributed to the conviction" and should not have been admitted as evidence in his trial. We need not address whether the trial court erred in admitting the video taped interview because we find that, even if the admission was error, it was harmless.

■ Although some constitutional rights are so fundamental that their violation can never be deemed harmless error, *see Allen v. State,* 310 Ark. 384, 838 S.W.2d 346 (1992), others are subject to the harmless-error analysis. *Jones v. State,* 336 Ark. 191, 984 S.W.2d 432 (1999) (citing *Chapman v. California,* 386 U.S. 18 (1967)). To conclude that a constitutional error is harmless and does not mandate a reversal, this court must conclude beyond a reasonable doubt that the error did not contribute to the verdict. *Id.* (citing *Schalski v. State,* 322 Ark. 63, 907 S.W.2d 693 (1995); *Allen v. State, supra; Vann v. State,* 309 Ark. 303, 831 S.W.2d 126 (1992)). Our supreme court has held that trial error, even involving the Confrontation Clause, is subject to a harmless-error analysis. *See Watson v. State,* 318 Ark. 603, 887 S.W. 2d 518 (1994); *see also Winfrey v. State,* 293 Ark. 342, 738 S.W.2d 391 (1987).

In *Winfrey v. State, supra,* our supreme court stated that "when determining whether the denial of a party's right to cross-examine a witness for possible bias is harmless error, the court considers a host of factors, including the importance of the witness's testimony, whether the testimony was cumulative, whether evidence existed that corroborates or contradicts the testimony of a witness, and the overall strength of the prosecution's case." *See also Sullivan v. State,* 32 Ark. App. 124, 798 S.W.2d 110 (1990). The correct inquiry is whether, assuming that the damaging potential of the cross-examination was fully realized, this court might nonetheless say that the error was harmless beyond a reasonable doubt. *Winfrey v. State, supra.*

In applying the *Chapman* analysis, we excise the interview of T.B. conducted by McCutcheon and determine whether the remaining evidence shows beyond a reasonable doubt that the error did not contribute to the verdict. *See Chapman v. California, supra.* In this case, the jury had before it appellant's own admission during his interview with Detective Abercrombie that he engaged in inappropriate sexual conduct with T.B. Appellant specifically admitted that, while appellant and T.B. were lying in his bed together, appellant put his hand on T.B.'s private area. Appellant further admitted that he made T.B. touch his penis and that T.B.

kissed his penis. He also admitted that he ejaculated in her presence.[2] In addition to appellant's own admission of his actions, Dr. Farst described the "notch" that was discovered on T.B.'s hymen as being located at the "five o'clock position," which was indicative of the force and direction of penetration. She was able to rule out accidental injury, and she opined that the notch was consistent with intentional penetration past her genitalia. Mc-Cutcheon also testified without objection that T.B. used the dolls to demonstrate how appellant touched her and that "T.B. pressed one doll against the other." McCutcheon further testified that T.B. disclosed during the interview that penetration occurred.[3] Finally, T.B.'s aunt testified that T.B. told her that appellant had touched her in her private area.

Therefore, given the other evidence presented at trial, the introduction of the video tape is at best cumulative. Thus we conclude, beyond a reasonable doubt, that the introduction of the video tape did not contribute to appellant's conviction and its introduction was harmless. Accordingly, we affirm.

GLADWIN, VAUGHT and CRABTREE, JJ., agree.

HART, J., concurs.

GRIFFEN, J., dissents.

WENDELL GRIFFEN, Judge, dissenting.

*The substance of the constitutional protection is preserved to the prisoner in the advantage he has once had of seeing the witness face to face, and of subjecting him to the ordeal of a cross-examination. This, the law says, he shall under no circumstances be deprived of[.]*
— *Mattox v. United States,* 156 U.S. 237, 244 (1895).

---

[2] The dissent describes appellant's actions as merely "improper judgment" on his part, when, in fact, appellant specifically admitted to Detective Abercrombie that appellant "hit her on her privates" with his hand; that he "made T.B. touch his penis;" that "T.B. kissed his penis;" and that he ejaculated in her presence.

[3] The dissent notes that McCutcheon's testimony regarding T.B.'s statements during the interview was "equally inadmissible." However, appellant made no specific objection at trial to McCutcheon's testimony regarding T.B.'s statements. Further, appellant does not assert on appeal that the trial court erred in admitting McCutcheon's testimony. Arguments not raised on appeal are deemed abandoned. *See King v. State,* 323 Ark. 671, 916 S.W.2d 732 (1996).

The trial court — despite following the dictates of Ark. R. Evid. 804(b)(7) (2004) — admitted T.B.'s videotaped statement in violation of appellant's Sixth Amendment rights. Because I do not agree the error was harmless beyond a reasonable doubt, I respectfully dissent.

In *Crawford v. Washington*, 541 U.S. 36 (2004), Crawford was convicted of assault after he stabbed a man who allegedly attempted to rape his wife. Crawford claimed that the stabbing was in self-defense. To disprove his defense, the State introduced a tape-recorded statement given to the police by Crawford's wife.[1] The United States Supreme Court reversed Crawford's conviction. After laying out a detailed history of the Confrontation Clause and its applicability to out-of-court statements, the Court addressed two inferences about the meaning of the Sixth Amendment. First, it observed that the Confrontation Clause was directed at eliminating the use of *ex parte* examinations as evidence against the accused. The Court stated:

> An off-hand, overheard remark might be unreliable evidence and thus a good candidate for exclusion under the hearsay rules, but it bears little resemblance to the civil-law abuses the Confrontation Clause targeted. On the other hand, *ex parte* examinations might sometimes be admissible under modern hearsay rules, but the Framers certainly would not have condoned them.

*Crawford*, 541 U.S. at 51.

Second, the Court concluded that, under *Mattox v. United States*, 156 U.S. 237 (1895), the Framers would not have admitted such statements unless the declarant was unavailable to testify and unless the defendant had a prior opportunity to cross-examine the declarant. The Court stated:

> Our later cases conform to *Mattox*'s holding that prior trial or preliminary hearing testimony is admissible only if the defendant had an adequate opportunity to cross-examine. Even where the defendant had such an opportunity, we excluded the testimony where the government had not established unavailability of the

---

[1] The prosecution could not call Crawford's wife to testify because of interspousal privilege, which in Washington bars a spouse from testifying without the consent of the other spouse. *Crawford*, 541 U.S. at 40. However, this privilege did not extend to an out-of-court statement. *Id.*

witness. We similarly excluded accomplice confessions where the defendant had no opportunity to cross-examine. In contrast, we considered reliability factors beyond prior opportunity for cross-examination when the hearsay statement at issue was not testimonial.

*Crawford*, 541 U.S. at 57 (internal citations omitted).

For the most part, the Court noted, past decisions had been consistent with the Framers' understanding of the Confrontation Clause. However, the rationales behind its more recent decisions were not in line with the Framers' intent. In *Ohio v. Roberts*, 448 U.S. 56 (1980), the Court conditioned the admissibility of hearsay evidence on either being a "firmly rooted hearsay exception." or bearing "particularized guarantees of trustworthiness." *Crawford*, 541 U.S. at 60 (quoting *Roberts*, 448 U.S. at 66). This test, which admits evidence on the sole basis of reliability, went against Confrontation Clause jurisprudence. Reliability was subject to many factors of varying weight, that weight being decided by whatever balancing test the court is using in that jurisdiction. *See generally id.* (citing examples of different courts attaching the same significance to opposing factors). However, the biggest problem with the *Roberts* test was that it declared admissible testimonial statements that the Confrontation Clause was meant to exclude. And "[t]o add insult to injury, some of the courts that admit untested testimonial statements find reliability in the very factors that *make* the statements testimonial." *Id.* at 65.

The Supreme Court concluded that non-testimonial hearsay does not implicate the Confrontation Clause and could be guided by general hearsay principles. However, the Confrontation Clause demands that before testimonial hearsay is admitted, the declarant must be unavailable and the defendant must have had a prior opportunity to cross-examine the declarant. Therefore, to determine the admissibility of a hearsay statement that may potentially violate the Sixth Amendment, a court needs only to answer three questions: (1) is the hearsay "testimonial"; (2) is the declarant unavailable to testify;[2] and (3) is the testimony being offered without the defendant having an adequate opportunity to cross-

---

[2] If the declarant testifies at trial, then testimonial hearsay may be admitted without violating the Confrontation Clause. *See People v. Argomaniz-Ramirez*, 102 P.3d 1015 (Colo. 2004); *State v. Carothers*, 692 N.W.2d 544 (S.D. 2005).

examine the declarant? If all three questions are answered in the affirmative, then the statement is inadmissible.

In the case before us, T.B.'s videotaped statement was admitted in violation of appellant's Sixth Amendment rights. First, the statement was testimonial hearsay. Although it declined to define the term "testimonial," the Supreme Court stated, "Statements taken by police officers in the course of interrogations are also testimonial under even a narrow standard." *Crawford*, 541 U.S. at 52. McCutcheon acted as a police interrogator, obtaining information to determine if T.B. had been sexually abused. Second, T.B. was unavailable at trial. Neither appellant nor the State disputed this fact. Finally, appellant did not have an adequate opportunity to cross-examine T.B. One might argue that appellant had an opportunity to cross-examine her at the competency hearing; however, that hearing would have been an improper time for appellant to cross-examine T.B. *about her statement. See Scott & Johnson v. State*, 272 Ark. 88, 93, 612 S.W.2d 110, 113 (1981), *quoted in Proctor v. State*, 349 Ark. 648, 664, 79 S.W.3d 370, 380 (2002) ("Obviously admission depends upon the circumstances surrounding the hearing. In the case of a preliminary hearing admission depends on what kind of hearing is involved and whether it is a 'full fledged' hearing or a limited one."). Without a proper cross-examination, appellant was denied his Sixth Amendment right of confrontation.

I recognize the problems that *Crawford v. Washington, supra*, presents. The drafters of Rule 804(b)(7) intended to protect children from the potential harms resulting from giving testimony in open court. Under *Ohio v. Roberts, supra*, the child-hearsay rule passed constitutional muster. The holding in *Crawford v. Washington, supra*, may operate to eviscerate the rule. *See* Note, *Repercussions of* Crawford v. Washington: *A Child's Statement to a Washington State Child Protective Services Worker May Be Inadmissible*, 80 Wash. L. Rev. 219 (2005) (arguing that *Crawford* requires a prior opportunity to cross-examine before a child's statement to a child protective services worker can be properly admitted). However, judges are obligated to follow the dictates of the Constitution, even at the cost of excluding valuable testimony.[3] The right to cross-examine a young witness may present a problem, but the problem must be addressed by the State in its case. The State is obligated to present

---

[3] This problem is not unique to Arkansas, as other jurisdictions have found similar child-hearsay statements to be inadmissible at trial. *See, e.g., People v. Sisavath*, 118 Cal. App. 4th

a competent witness. It should not be permitted to introduce evidence of testimonial statements that cannot be cross-examined, made by an incompetent witness.

Rather than apply *Crawford*'s holding to child-hearsay statements, the majority has sidestepped the issue by declaring the error in this case harmless. The majority correctly states the law regarding harmless-error analysis regarding the Confrontation Clause. Where evidence of guilt is overwhelming and the error is slight, an appellate court can declare the error harmless and affirm. *Proctor v. State*, 349 Ark. 648, 79 S.W.2d 370 (2002). Before declaring that an error is harmless, an appellate court must conclude *beyond a reasonable doubt* that the error did not contribute to the verdict. *Jones v. State*, 336 Ark. 191, 984 S.W.2d 432 (1999). Factors in determining whether the error was harmless include the importance of the victim's testimony in the State's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and the overall strength of the State's case. *Andrews v. State*, 344 Ark. 606, 42 S.W.3d 484 (2001) (citing *Delaware v. Van Arsdall*, 475 U.S. 673 (1986)).

In this case, the only substantial testimony apart from T.B.'s videotaped statement is appellant's statement to Detective Abercrombie, Sangwin's testimony that T.B. told her that appellant touched her (which might also be inadmissible under *Crawford v. Washington, supra*), and the medical testimony. The majority also depends on McCutcheon's testimony in support of its decision; however, that testimony is equally inadmissible because it is also testimonial hearsay not subject to cross-examination.[4] By relying on McCutcheon's testimony, the majority relies on T.B.'s erroneously admitted unsworn statement in its harmless-error analysis. Under the majority's circular reasoning, testimonial hearsay from a child who has been declared incompetent to testify renders the erroneous admission of that incompetent hearsay harmless. Yet, the United States Supreme Court deemed this kind of proof

---

1396, 13 Cal. Rptr. 3d 753 (2004); *People v. Vigil*, 104 P.3d 258 (Colo. Ct. App. 2004); *In re T.T.*, 351 Ill. App. 3d 976, 815 N.E.2d 789 (2004); *Snowden v. State*, 156 Md. App. 139, 846 A.2d 36 (2004).

[4] Because the definition of "statement" includes nonverbal conduct intended by the declarant as an assertion, *see* Ark. R. Evid. 801(a)(2) (2004), T.B.'s use of the dolls in response to McCutcheon's questions was equally inadmissible.

inadmissible and reversed an assault conviction in *Crawford v. Washington, supra*. The *Crawford* holding repudiates any notion that the error that occurred in this case was "harmless."

On the other hand, the jury watched an interview of five-year old T.B. telling an interviewer what appellant allegedly did. By holding the error harmless, the majority discounts the powerful effect of T.B.'s videotaped statement. In *Bockting v. Bayer*, 399 F.3d 1010 (9th Cir. 2005), the Ninth Circuit declined to hold the error harmless because "the detective's description of [the victim's] interview was so significant that the error could have materially affected the verdict." *Id*. at 1022. The Colorado Court of Appeals also declined to hold the error harmless in *People v. Vigil, supra*, stating that "[a]lthough there was other corroborative evidence, . . . the child's statements to the interviewer provided the most detailed account of the incident and afforded the jurors the opportunity to hear what had happened from the child himself." *Id*. at 264 (citing *People v. Newbrough*, 803 P.2d 155, 161 (Colo. 1990) ("A videotaped interview of a child victim, by itself, is undoubtedly more powerful, and thus potentially more prejudicial, than testimony of a witness about what the child said.")). Our own jurisprudence gives substantial credence to the accusations of a rape victim, as the uncorroborated testimony of a rape victim is sufficient testimony to convict. *See Butler v. State*, 349 Ark. 252, 82 S.W.3d 152 (2002); *Chrobak v. State*, 75 Ark. App. 281, 58 S.W.3d 387 (2001). Given the powerful effect that T.B.'s videotaped statement could have had on the jury, to hold that the erroneous admission of that statement was harmless beyond a reasonable doubt requires that one ignore this solid line of judicial precedent. I see no reason to do so and have found no explanation for doing so in the majority opinion.

The Confrontation Clause of the Sixth Amendment exists to guarantee all litigants the right to have their legal interests adjudicated based on competent proof that is presented to impartial triers-of-fact. I do not understand how that fundamental guarantee is upheld when courts admit videotaped statements by persons that trial judges properly deemed incompetent witnesses in criminal trials. In this criminal trial for rape of a child, appellant had no opportunity to cross-examine T.B. in order to provide the trier of fact with anything close to a meaningful basis for assessing her veracity. The trial court declared T.B. incompetent to testify, yet allowed the State to introduce her videotaped statement during

appellant's jury trial. Because I do not believe it is fair to torture the Sixth Amendment merely to make child-rape convictions easier to obtain, I respectfully dissent.