



# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV–14–573

| | |
|---|---|
| N.W. | **Opinion Delivered** February 4, 2015 |
| APPELLANT | APPEAL FROM THE BENTON COUNTY CIRCUIT COURT [NO. J–2013–593–D] |
| V. | |
| STATE OF ARKANSAS | |
| APPELLEE | HONORABLE THOMAS E. SMITH, JUDGE |
| | REVERSED AND REMANDED |

### DAVID M. GLOVER, Judge

N.W., a juvenile, was charged with rape in a delinquency petition. After a hearing on the matter, the trial court found the allegation to be true, adjudicated N.W. delinquent, placed him on supervised probation, and ordered him to pay $685 in costs, fees, and restitution. N.W. now appeals, arguing that the trial court erred in admitting an interview of the child victim performed by the Children's Advocacy Center and that the trial court erred in not granting his motion for dismissal. We affirm in part and reverse and remand in part.

The facts of the case are as follows. A report was made to the Child Abuse Hotline on August 15, 2013, alleging that N.W. had sexually abused N.A.J., his four-year-old cousin, at some time between April and August 13, 2013. N.W. was fourteen at the time. Detective Jeff Reams of the Rogers Police Department was assigned the case on the same day the report

was made; he learned that an interview with the Children's Advocacy Center (CAC) had been scheduled for N.A.J. on that afternoon; and he observed the interview of N.A.J. by Erin Kraner, a forensic interviewer for CAC, from an observation room outside the interview room (but he did not interview N.A.J. in addition to the interview performed by Kraner). Kraner's interview with N.A.J. was recorded. Reams recalled that he spoke with Kraner both before and after the interview of N.A.J., and he collected a taped copy of the interview Kraner had with N.A.J. He explained that the forensic interviewer, who is specifically trained to interview children, conducts one interview; the police can use that statement without having to interview the child again and again. Reams could not remember if he had communicated questions to Kraner to ask N.A.J., but stated it was common for him to have questions he wanted a victim to be asked.

The State attempted to call N.A.J. as a witness, but she refused to cooperate during the attempts to examine her. The trial court found that, although N.A.J. was competent, she was unavailable as a witness. The State then moved to have the tape of N.A.J.'s interview introduced through Kraner's testimony. N.W.'s counsel objected to the tape being played, arguing that it would be testimonial and would violate N.W.'s right to confront his accuser under the United States Supreme Court case of *Crawford v. Washington*, and that the rules of evidence did not trump the right to confront witnesses. The State responded that the information contained in the interview was not testimonial. The trial court noted counsel's objection and allowed the State to call Kraner as a witness.

Kraner explained that CAC was a child-friendly facility that provides a comprehensive service for purposes of investigation so that a child only had to be interviewed once when multiple agencies were involved. Kraner described herself as a neutral fact-finding individual who was there to ask questions and elicit reliable information. She said that the only persons who were allowed in the observation room during an interview were the investigative personnel involved in that specific case, whether it was the Arkansas State Police, DHS, other law enforcement, or prosecutors. Kraner stated it was common protocol that, at the end of the interview, there is a break and discussion with the investigative entities to ensure that the interview covered everything that the investigative entity wanted to be covered. She testified that the police were involved in this interview.

At this point in the proceedings, the trial court viewed the videotape of the interview with N.A.J. In the interview, N.A.J. stated that N.W. had touched her all over her body; that he had touched her with his fingers while she was not wearing clothes; that N.W. had touched her chest under her clothes on her skin and that his hand stayed still; that he touched her butt with his hands and put his hand in her butt; and that he touched her "cuckoo." According to Kraner, after N.A.J. relayed this information, she stepped out of the room to see if there were any more questions she needed to ask, and when she returned, she asked N.A.J. about N.W. touching her "cuckoo," and N.A.J. said that he touched it one time with his hand.

After the playing of the taped interview, N.W.'s counsel again objected, arguing that the tape was testimonial and that she had not had an opportunity to cross-examine N.A.J.

3

The trial court found that the purpose of the CAC was to interview children in a non-leading, non-coercive, and non-testimonial way; that N.A.J.'s testimony was reliable; that there were sufficient guarantees of trustworthiness; that cross-examination would be marginal, at best; and that N.A.J.'s statement was spontaneous and consistent. The trial court allowed the taped interview to come into evidence under Rule 804(b)(7)(A) of the Arkansas Rules of Evidence.

*Sufficiency of the Evidence*

Although his sufficiency argument is N.W.'s second point on appeal, we address this issue first because double-jeopardy concerns require a review of the sufficiency of the evidence prior to a review of any asserted trial errors. *Stewart v. State*, 2010 Ark. App. 323, 374 S.W.3d 811. The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, or evidence that is of sufficient certainty to compel a conclusion one way or the other and pass beyond mere speculation and conjecture. *Id.* When reviewing a challenge to the sufficiency of the evidence, all of the evidence, including that which may have been inadmissible, is considered in the light most favorable to the State. *Id.* A person commits rape if he engages in sexual intercourse or deviate sexual activity with another person who is less than fourteen years of age. Ark. Code Ann. § 5-14-103(a)(3)(A) (Repl. 2013). "Deviate sexual activity" is defined as "any act of sexual gratification involving the penetration, however slight, of the labia majora or anus of a person by any body member or foreign instrument manipulated by another person." Ark. Code Ann. § 5-14-101(1)(B) (Repl. 2013).

 

A motion to dismiss in a bench trial is treated as a challenge to the sufficiency of the evidence. *T.C. v. State*, 2010 Ark. 240, 364 S.W.3d 53. The Arkansas Rules of Criminal Procedure apply to delinquency proceedings. *Id.* Rule 33.1(b) of the Arkansas Rules of Criminal Procedure provides that in nonjury trials, motions for dismissal shall be made at the close of all of the evidence and state the specific grounds therefor; if a motion to dismiss is made at the conclusion of the prosecution's evidence, then the motion must be renewed at the close of all of the evidence. Failure to make sufficiency arguments in the manner prescribed constitutes a waiver of any question of sufficiency of the evidence. Ark. R. Crim. P. 33.1(c). Rule 33.1 is strictly construed; a dismissal motion must be specific enough to advise the trial court of the exact element of the crime that the State has failed to prove, and a general motion merely asserting that the State has failed to prove its case is inadequate to preserve a sufficiency issue for appeal. *T.C. v. State*, *supra*.

Here, N.W.'s counsel moved for dismissal at the close of all the evidence, simply stating that there was no evidence other than the tape. This general statement does not advise the trial court of any missing element; it merely states that there is no evidence other than the tape. This general motion is not adequate to preserve a challenge to the sufficiency of the evidence. Therefore, N.W.'s challenge to the sufficiency of the evidence is not preserved for our review.

*Confrontation-Clause Violation*

N.W.'s remaining point on appeal is that the trial court erred in admitting CAC's taped interview of N.A.J. into evidence because it was testimonial. Issues of constitutional



interpretation are reviewed de novo. *Navarro v. State*, 371 Ark. 179, 264 S.W.3d 530 (2007). We find merit in this argument, and we reverse and remand on this issue.

In order for hearsay statements to be admissible against a defendant at a criminal trial, two separate requirements must be met—first, an exception to the general rule prohibiting hearsay must be demonstrated, and second, the admission of the hearsay cannot violate a defendant's Sixth Amendment right to confront witnesses against him. *Seely v. State*, 373 Ark. 141, 282 S.W.3d 778 (2008).

The trial court in this case determined that N.A.J.'s hearsay testimony was admissible under Rule 804(b)(7)(A) of the Arkansas Rules of Evidence, which applies when the declarant is unavailable. No one contests the fact that N.A.J. was unavailable or that the trial court's finding that the requirements of the unavailable-child exception to the rule excluding hearsay were met. The hearsay exception the trial court found applicable provides:

> (7) *Child hearsay in criminal cases*. A statement made by a child under the age of ten (10) years concerning any type of sexual offense against that child, where the Confrontation Clause of the Sixth Amendment of the United States is applicable, provided:
>
> (A) The trial court conducts a hearing outside the presence of the jury, and, with the evidentiary presumption that the statement is unreliable and inadmissible, finds that the statement offered possesses sufficient guarantees of trustworthiness that the truthfulness of the child's statement is so clear from the surrounding circumstances that the test of cross-examination would be of marginal utility. The trial court may employ any factor it deems appropriate including, but not limited to those listed below, in deciding whether the statement is sufficiently trustworthy.
>
> 1. The spontaneity of the statement.
>
> 2. The lack of time to fabricate.
>
> 3. The consistency and repetition of the statement and whether the child has recanted the statement.



4. The mental state of the child.

5. The competency of the child to testify.

6. The child's use of terminology unexpected of a child of similar age.

7. The lack of a motive by the child to fabricate the statement.

8. The lack of bias by the child.

9. Whether it is an embarrassing event the child would not normally relate.

10. The credibility of the person testifying to the statement.

11. Suggestiveness created by leading questions.

12. Whether an adult with custody or control of the child may bear a grudge against the accused offender, and may attempt to coach the child into making false charges.

Rule 804(b)(7)'s requirement that a child's hearsay statement "possess[ ] sufficient guarantees of trustworthiness" to be admissible as a hearsay exception when the declarant was unavailable was in line with the United States Supreme Court's decision in *Ohio v. Roberts*, 448 U.S. 56 (1980), until the 2004 case of *Crawford v. Washington*, 541 U.S. 36 (2004). *Seely v. State*, 373 Ark. 141, 282 S.W.3d 778 (2008). In *Crawford*, the Supreme Court, noting that the Sixth Amendment's Confrontation Clause provides that, "in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him," held that the focus of the Confrontation Clause was whether or not the statements were testimonial. The *Crawford* court held:

> The text of the Confrontation Clause reflects this focus [on testimonial statements]. It applies to "witnesses" against the accused—in other words, those who "bear testimony." 2 N. Webster, An American Dictionary of the English Language (1828). "Testimony," in turn, is typically "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Ibid.* An accuser who makes a

formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not. The constitutional text, like the history underlying the common-law right of confrontation, thus reflects an especially acute concern with a specific type of out-of-court statement.

541 U.S. at 51.

The *Crawford* court held that testimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable and when the defendant has had a prior opportunity to cross-examine. 541 U.S. at 59. However, it did not set forth a comprehensive definition of what types of statements were "testimonial," holding that "[w]hatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a formal trial; and to police interrogations." 541 U.S. at 68.

N.A.J.'s statements here do not fall within the confines of the limited definition set forth in *Crawford*; we therefore must look to further case law to determine what constitutes testimonial evidence. In *Davis v. Washington*, 547 U.S. 813 (2006), the Supreme Court was faced with the question of whether statements made in the course of a 911 call were testimonial. The *Davis* court held that statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency, but are testimonial when circumstances objectively indicate that there is no ongoing emergency and the purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution. 547 U.S. at 822.

*Seely*, *supra*, is the only case in which our supreme court has addressed whether statements are testimonial after the *Crawford* decision. In that case, a three-year-old girl complained to her mother that her "booty" was hurting; when the mother pressed further, the child told her that her daddy put his fingers in her booty and dug in her booty. The child's mother took her to Arkansas Children's Hospital where the child was interviewed by a social worker prior to being examined by a doctor. The child told the social worker that her daddy put his finger in her booty and pointed to her front genital area. The child was found incompetent to testify at trial. The social worker testified that the main objective of her interview was to determine whether a physical exam should be conducted and, if so, what type of physical exam. On those facts, our supreme court found that not only were the child's statements to her mother nontestimonial, so were the statements made to the social worker. The *Seely* case held that the question of whether the social worker was acting as a government agent turned on the primary purpose of her interview with the child—if the primary purpose was to gather evidence for potential use in a subsequent prosecution, then the social worker was acting as a government agent. Our supreme court concluded that the primary purpose of the interview was to define the scope of the necessary medical treatment and therefore, the statements were nontestimonial.

The present case is distinguishable from *Seely*. Here, there was no evidence that the interview was to determine if any medical treatment was necessary. The interview was watched by the police detective, the interviewer consulted with the detective to make sure all questions he wanted asked were asked, and the detective took a copy of the interview with

him when he left. All of these factors lead our court to conclude that N.A.J.'s statement was testimonial.

The case of *United States v. Bordeaux*, 400 F.3d 548 (8th Cir. 2005), is also instructive. In that case, after allegations of sexual abuse arose, the victim was referred to a center for evaluation; she was interviewed by a forensic examiner; the interview was videotaped; and two copies of the interview were made, one for medical records and one for law-enforcement officials. The trial court found the child witness to be unavailable[1] and that the statements made during the interview were testimonial—the interview was formal and involved the government, and, even though the purpose of the interview was disputed,

> the evidence require[d] the conclusion that the purpose was to collect information for law enforcement. First, as a matter of course, the center made one copy of the videotape of this kind of interview for use by law enforcement. Second, at trial, the prosecutor repeatedly referred to the interview as a "forensic" interview, meaning that it "pertain[ed] to, [was] connected with, or [was to be] used in courts of law." ... That [the victim's] statements may have also had a medical purpose does not change the fact that they were testimonial, because *Crawford* does not indicate, and logic does not dictate, that multi-purpose statements cannot be testimonial.

400 F.3d at 556.

*Bordeaux* makes it clear that in some situations, an interview can be both testimonial and nontestimonial—the two are not mutually exclusive. Here, there was no testimony that the interview was disseminated to anyone else except law enforcement. Accordingly, we agree with N.W.'s argument that the interview was testimonial—the primary purpose of the

---

[1]Although the child in Bordeaux testified at trial, she did so via two-way closed-circuit television, which was held to violate the defendant's right to confront witnesses, and therefore she was deemed to be unavailable for confrontation purposes.

interview was for prosecution, and the introduction of the interview into evidence did indeed violate his right to confront witnesses against him.

The State contends that even if our court finds that the videotaped interview was testimonial and violated N.W.'s right to confront his accuser, its admission was harmless beyond a reasonable doubt, arguing that N.A.J. had told her mother and grandmother, at different times, that N.W. had touched her. We cannot agree with this assertion.

Trial error, even involving the Confrontation Clause, is subject to a harmless-error analysis. *Sparkman v. State*, 91 Ark. App. 138, 208 S.W.3d 822 (2005). To conclude that a constitutional error is harmless and does not mandate a reversal, our court must conclude beyond a reasonable doubt that the error did not contribute to the verdict. *Id*. When determining whether the denial of a party's right to confront witnesses is harmless error, our court must consider factors such as the importance of the witness's testimony, whether the testimony was cumulative, whether there was corroborating or contradicting evidence, and the overall strength of the State's case. *Id*.

N.A.J.'s interview was the only evidence of rape presented by the State. N.A.J.'s mother testified that she took N.A.J. to the doctor because N.A.J. said her "cuckoo" (vagina) was hurting (which was diagnosed as a bacterial infection) and that N.A.J. had told the doctor that N.W. had touched her. However, N.A.J. had not told the doctor where N.W. had touched her. N.A.J.'s grandmother testified that N.A.J. had reported to her that N.W. had touched her in an inappropriate way, but again there was no testimony as to where N.W. had touched N.A.J. Her grandmother also testified that she had never witnessed any inappropriate

11



touching. Without N.A.J.'s statement, there is not enough evidence to support the finding that N.W. raped N.A.J. We cannot say that allowing N.A.J.'s interview into evidence was harmless error.

Reversed and remanded.

ABRAMSON and HARRISON, JJ., agree.

*Holthoff & Richards, LLP*, by: *Amos J. Richards*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *LeaAnn J. Adams*, Ass't Att'y Gen., for appellee.