Cite as 2025 Ark. App. 443

# ARKANSAS COURT OF APPEALS
## DIVISION III
### No. CR-24-694

| | |
|---|---|
| CHARLES BAUGHER JR.<br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | Opinion Delivered September 24, 2025<br><br>APPEAL FROM THE MONTGOMERY COUNTY CIRCUIT COURT<br>[NO. 49CR-22-22]<br><br>HONORABLE ANDY RINER, JUDGE<br><br>AFFIRMED |

**WENDY SCHOLTENS WOOD, Judge**

Charles Baugher appeals a Montgomery County Circuit Court sentencing order convicting him of rape (Class Y felony) and second-degree sexual assault (Class B felony) and sentencing him, respectively, to ten years' imprisonment and a $5000 fine. On appeal, Baugher contends that his Sixth Amendment right to confrontation was violated when the circuit court allowed a State's witness to testify via Zoom, a two-way video-conferencing platform. We affirm.

On May 5, 2022, the State filed a felony information charging Baugher with the rape and second-degree sexual assault of Minor Victim 1 (MV1) and with the rape of Minor Victim 2 (MV2), his former stepchildren. Baugher was married to Kimberly Baugher, the mother of MV1 and MV2. MV1 and MV2 lived with their mother and Baugher.

Baugher's jury trial was held on February 13–14, 2024. MV1, who was nineteen at the time of trial, testified that Baugher sexually abused her when she was a minor. MV1 stated that Baugher grabbed and slapped her behind, which was corroborated by another witness. MV1 stated that on another occasion, Baugher groped her breast under her clothing while she was driving him around when he was drunk. MV1 also testified that when she was fifteen years old, Baugher entered her bedroom, pinned her down on the bed, and put his fingers in her vagina.

MV2, who was seventeen at the time of trial, testified that Baugher also sexually abused him. Specifically, MV2 said that when he was twelve and thirteen, Baugher used his mouth and hands to touch MV2's penis, and Baugher put his finger in MV2's "butt." In addition, Baugher sent inappropriate text messages to MV2, which were introduced at trial. These included the following messages: Baugher asked MV2 to send "hot pics"; referred to MV2's penis as "big daddy," called "dibs on big daddy!!!," and stated "[l]et me see big daddy!!!!"; and told MV2 that Baugher might let him drive Baugher around "while u get sucky sucky lol." Baugher ended one text conversation by telling MV2 "goodnight love you don't yank it too much" followed by a text with sexually suggestive emojis.

Greg Harmon testified that he interviewed Baugher regarding the allegations when he (Harmon) was an investigator for the Montgomery County Sheriff's Department. Harmon said that Baugher admitted he had touched MV1's breast when he was drunk and that he had apologized to her, but he denied touching her vagina. Harmon also testified that Baugher admitted in his interview that he had helped MV2 masturbate on two occasions

2

and that he (Baugher) put his mouth on MV2's penis on one occasion. The audiotape of Baugher's interview was played for the jury and introduced into evidence. Harmon also said that Baugher drew a line on a sketch of a penis to demonstrate how far he had put MV2's penis into his mouth. The drawing, which had Baugher's signature on it, was also introduced into evidence.

The State intended to call Tiffany Chambers to testify pursuant to Arkansas Rule of Evidence 404(b). The day before trial, Chambers notified the State that she had tested positive for COVID-19, was symptomatic, and had a note from CHI St. Vincent Medical Clinic stating that she was seen on February 12 and could return to work on February 16. On the same day, the State moved for a blended proceeding under Arkansas Rule of Civil Procedure 88 requesting that Chambers be allowed to testify virtually rather than in person. The circuit court heard the motion on the first day of trial.

The State argued that Chambers was an "essential" witness who was willing to testify by video from another room in the courthouse or in the courtroom with a mask and distancing. The State claimed that a continuance was not appropriate at "this juncture." The State contended that if Chambers was allowed to testify by video, the testimony would be on the "big screens so everyone can see her face" and that the attorney who would be questioning her could stand in a position so that Chambers could see the attorney's face.

Defense counsel objected to Chambers testifying by video but agreed to her testifying in the courtroom with a mask and distancing. He argued that "these jury trials require the highest level of truthfulness . . . the highest level of due process . . . . And when someone

3

appears on video, it's much more difficult to determine how truthful they are. It's much more difficult to determine who's in the room with them. . . . You lose a lot of the gestures . . . [and] reactions." Counsel stated that video testimony "can create so many issues because of the lack of due process that's involved."

In overruling Baugher's objection, the circuit court addressed the requirements of Rule 88 and, specifically, the requirement that procedures are in place to protect the constitutional, statutory, and procedural rights of the parties. The circuit court referenced *Maryland v. Craig*, 497 U.S. 836 (1990), stating:

> Craig versus Maryland is an old case, but Justice Scalia writing for the majority or writing in a dissent thought that that meant face-to-face confrontation. However, the Supreme Court held that that was not necessarily so that there was a right to confrontation through closed-circuit television.

> And so there's a procedure in place to protect the constitutional rights of the parties specifically that you can have the same communication, you'll have communication with your client directly sitting there at the table just like if the witness was present in the courtroom, you'll have communication with him.

The circuit court further stated that the "ruling is based upon [the fact that] she'll be here physically present in case anything fails," presumably referencing the fact that Chambers would be in the courthouse.[1]

Defense counsel responded:

> Further, Your Honor, we're going to be stuck standing in one place standing -- and by doing that, by just having to be like this, you lose your jury, you lose the ability to see the jury, respond to the jury, see what the jury's doing, all of those

---

[1]The court noted that the sheriff's department would be providing a room in the courthouse for Chambers to testify and that counsel could examine the room before Chambers was called to assure no one else was in the room.

4

different things, which again will greatly impact our ability to give him his due process rights.

We kind of stand in a position if it was only with the Court, but the Court would still be in front of us, it's one thing and I think that's one of the differences in this, but with a jury over there who had to determine if Mr. Baugher is guilty of something that could put him in prison for the rest of his life, we would object.

The court again overruled Baugher's objection.

The second day of trial, Chambers was called as the State's first witness, and the Confrontation Clause issue was discussed again. The circuit court stated that it had reviewed the protocols "which had been set out by the Centers on Disease Control" that "indicate that if she tested positive five days ago, that she can't come in until she's been fever free for 24 hours . . . without the aid of Tylenol or Ibuprofen."

Outside the presence of the jury, Chambers testified that she had a doctor's note in her car excusing her from work, although it did not state that she tested positive for COVID-19. She added that the February 12 positive test result was in her electronic medical record. She said she had had a fever since her diagnosis and was taking Tylenol. The court stated that it would take her word for it and requested the doctor's note from her car, which was admitted as a court exhibit. The court also stated that it could not "safely bring her into the courtroom at this point in time under current COVID protocols" and allowed Chambers to testify via video.

Chambers, thirty-three at the time of trial, testified that she had visited Baugher's home when he was married to her older sister. She testified that while there, Baugher raped her twice when she was fourteen years old.

5

After the State rested, Baugher testified in his defense, generally denying the allegations, explaining that the text messages to MV2 were nothing more than joking and not sexual in nature and asserting that he admitted during his interview that he had touched MV2 only because the officer argued with him for hours and lied to him about the presence of DNA evidence. The defense also presented the testimony of two of Baugher's daughters; his mother; and Alan Hirsh, an expert in interrogation tactics.

At the conclusion of the trial, the jury found Baugher guilty of the rape of MV2 and the second-degree sexual assault of MV1 but acquitted him of the rape of MV1. Baugher's sole argument on appeal is that the circuit court violated his Sixth Amendment Confrontation Clause rights by allowing Chambers to testify by video.

The Confrontation Clause in the Sixth Amendment to the United States Constitution states: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. Article 2, section 10 of the Arkansas Constitution reiterates that same right of confrontation. The Arkansas Supreme Court has consistently interpreted both clauses to provide identical rights. *Smith v. State*, 340 Ark. 116, 119, 8 S.W.3d 534, 536 (2000). The United States Supreme Court held in *Coy v. Iowa*, 487 U.S. 1012, 1016 (1988), that "the Confrontation Clause guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact." Thereafter, in a case involving the use of one-way video testimony of a child who was a victim of sexual abuse, the Court held that the Confrontation Clause does not guarantee criminal defendants an absolute right to a face-to-face meeting with the witnesses against them at trial. *Maryland*

*v. Craig*, 497 U.S. 836, 836–37 (1990). However, the Court emphasized that the preference is a strong one and that a defendant's Sixth Amendment confrontation right "may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." *Id.* at 850.

For purposes of this appeal, we assume, without deciding, that the circuit court violated Baugher's constitutional right to confront Chambers by allowing her to testify at his jury trial by video. *See, e.g., Sparkman v. State*, 91 Ark. App. 138, 142, 208 S.W.3d 822, 825 (2005). Importantly, a confrontation-clause violation is subject to a harmless-error analysis. *Lewis v. State*, 2019 Ark. App. 43, at 12, 571 S.W.3d 498, 505. To conclude that a constitutional error is harmless and does not mandate a reversal, this court must conclude beyond a reasonable doubt that the error did not contribute to the verdict. *Id*. at 12, 571 S.W.3d at 505.

In *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986), the Supreme Court elaborated on the harmless-error analysis:

> The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

Baugher argues that the error is not harmless beyond a reasonable doubt because there was no physical evidence of rape or sexual assault, the case hinged on the credibility of the alleged victims, and Chambers's testimony bolstered the victims' credibility. Baugher also notes that the State referred to Chambers as an "essential" witness. Moreover, despite the opportunity to cross-examine Chambers by video, Baugher contends that if Chambers had been present in the courtroom "with the damaging potential of cross-examination fully realized," the jury may not have believed her testimony; thus, there would have been a reasonable probability that the jury would not have believed the alleged victims' allegations. Baugher asserts that the "State's case was built on the testimony of the two alleged victims with only circumstantial corroboration in text messages."

Baugher's argument ignores his confession to his crimes. In the interview with Harmon, Baugher admitted grabbing MV1's "boob" (and apologizing for it) and putting his mouth on MV2's penis. *See Sparkman*, 91 Ark. App. at 142–43, 208 S.W.3d at 826 (noting Sparkman's admission in finding it was harmless error to introduce the videotaped interview of the four-year-old victim over the appellant's confrontation-clause objection). Baugher's confession also includes the sketch of a penis on which he drew a line to show how far he put MV2's penis into his (Baugher's) mouth. Moreover, both MV1 and MV2 testified about the details surrounding Baugher's sexual assault and rape. It has been consistently held that a sex-crime victim's testimony need not be corroborated, nor is scientific evidence required. *Harris v. State*, 2018 Ark. App. 520, at 8, 561 S.W.3d 766, 771. Considering the testimony of MV1 and MV2, coupled with the text messages between Baugher and MV2 and Baugher's

8

confession and drawing, we conclude beyond a reasonable doubt that any violation of Baugher's right to confront Chambers did not contribute to the verdict, and it was therefore harmless. Accordingly, we affirm.

Affirmed.

KLAPPENBACH, C.J., and VIRDEN, J., agree.

*John Wesley Hall* and *Samantha J. Carpenter*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Joseph Karl Luebki*, Ass't Att'y Gen., for appellee.